199 N.J. Super. 354 (1985)
489 A.2d 728
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN WALKER, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal, Union County.
Decided January 3, 1985.
*356 David J. Hancock for plaintiff (John H. Stamler, Union County Prosecutor, attorney).
James Weinberg for defendant (S. David Levy, attorney).
MENZA, J.S.C.
The State moves the court to permit the introduction into evidence of oral statements made by the victim several weeks after she was allegedly assaulted by defendant, on the basis that the statements are excited utterances. As a foundation for this contention, the State maintains that the statements are a product of a battered woman syndrome and therefore admissible as spontaneous utterances made in reasonable proximity to the event.
Defendant is charged with the crime of manslaughter. The State alleges that defendant assaulted his wife over a period of several months resulting in her sustaining serious injuries for which she was hospitalized and from which she eventually died. The State has no direct proofs of the assaults. Its proofs are *357 entirely circumstantial. They include certain oral statements made by the decedent while in the hospital prior to her death. At various times while in the hospital the decedent was overheard to say, "don't hit me," "don't hit me John," "I'll be good," "don't kick me," and statements of similar import. The statements were made by the decedent on numerous occasions commencing on the day of her admission and continuing until she died.
The State contends, at a Rule 8 hearing held for the purpose of determining the admissibility of the statements, that the oral statements made by the decedent were excited utterances because the decedent was "under the stress of a nervous excitement" when she made the statements. In accordance with that contention, the State introduced into evidence, for the court's review, the hospital records, police reports and various written statements taken of hospital personnel. It also presented the testimony of two physicians who treated the decedent at the hospital and a social worker who was offered as an expert on battered women. The physicians testified that the decedent was in a poor physical and mental condition during her period of hospitalization. They testified that her physical condition included numerous bruises about her body and a subdural hematoma. They described her poor mental state, explaining that at various times she was disoriented, withdrawn and confused.[1] In addition to the testimony of the physicians, the State presented the testimony of one Felicia Cohen. Cohen is a social worker who has had extensive experience dealing with *358 battered women.[2] Cohen was accepted by the court as an expert on the subject of battered women. (See State v. Kelly, 97 N.J. 178 (1984), holding in part that the battered woman syndrome is an appropriate subject for expert testimony.) Cohen did not speak to the victim prior to her death but did review the hospital reports, the written statements and the police reports. Based on this review, the witness formed the opinion that the victim had been a battered woman  the worst she had ever seen  and that she was suffering from a battered woman syndrome at the time she made the oral statements in the hospital. Cohen testified that the oral statements of the victim were made by her when she was in a state of extreme excitement engendered by a belief that she was at home with her assailant and being assaulted by him. The witness testified that this belief that she was experiencing an assault was triggered by her hearing a male voice or when she was physically touched. Cohen made it clear that, in her opinion, the utterances of the victim were not fabricated nor deliberate statements but were in fact spontaneous ones, the product of her legitimate belief, at the time they were made, that she was being assaulted by her assailant.
Evid.R. 63(4), spontaneous and contemporaneous statements, states:
A statement is admissible if it was made (a) while the declarant was perceiving an event or condition which the statement narrates, describes or explains, or (b) while the declarant was under the stress of a nervous excitement caused by *359 such perception, in reasonable proximity to the event, and without opportunity to deliberate or fabricate.
The rule is an exception to the hearsay rule and is premised on the proposition that a statement made while a person is under a state of excitement caused by the perception of a startling event or condition, is one which lacks the element of deliberateness and therefore has a high degree of reliability which justifies its admission. See Wigmore, Evidence (rev'd ed. 1976), § 1747.
In Lieberman v. Saley, 94 N.J. Super. 156 (1967), the court set forth the factors which must be considered in making a determination of admissibility:
[T]he court must decide the preliminary question of whether the declarant had an opportunity for deliberation or reflection, or whether the utterance was a spontaneous one. The matters for the court to consider are the element of time, the circumstances of the accident, the mental and physical condition of the declarant, the shock produced, the nature of the utterance, ... and any other material facts in the surrounding circumstances. [at 161]
It is the State's contention that the statements made by the victim during her hospitalization meet the criteria of the rule and are therefore admissible. The assistant prosecutor argues that the circumstances of the assaults, the shock produced as a result of their occurrence, the victim's poor physical and mental condition and the nature of the statements themselves, are all indicative that the statements meet the criteria of the rule. He argues further that the fact that the statements were made some period of time after the occurrence of the assaults does not affect their admissibility because the crucial element regarding the admissibility of a statement is not when the statement is made but whether it was made while the declarant was under the stress of nervous excitement caused by the event. The assistant prosecutor cites for this proposition, the case of Keefe v. State, 50 Ariz. 293, 72 P.2d 425 (1937).
In that case, the court stated:
The true test of spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous *360 excitement and shock produced by the act in issue, or whether that nervous excitement has died away so that the remark is elicited by the shock of some other act not at issue, which revives the memory of the act in question. [72 P.2d at 427]
If the court should conclude as a fact that the decedent had been assaulted and that she was reliving the assaults at the time she made the statements in the hospital, a good argument could be made that the statements are admissible as excited utterances regardless of the fact that they were made some time after the actual occurrence. The court cannot reach this conclusion however simply because the admissibility of the statements is premised upon assumptions which the court is unable to make. In order for the statements to be admissible it must first be shown that the declarant had been assaulted, that it was defendant who assaulted her and that the victim was reliving the assaults when she made the statements. The very issue which is to be determined in this trial is whether the decedent was in fact assaulted and whether defendant assaulted her. The court is unable to make a determination that the decedent was assaulted by defendant, but assuming for the sake of argument that she had been assaulted by him, the question that the court must determine is whether the decedent was reliving the assaults when she made the statements.
The problem lies with this assumption. How could one possibly know that the victim was in fact reliving the experiences of the assaults when she made the statements. How could one possibly know what she was thinking. Perhaps the victim was reliving an experience of her childhood. She may have been reliving other assaults involving different persons.[3] She may even have been reliving an experience relating to an assault committed by the defendant, but one which occurred years ago which has nothing at all to do with the instant *361 matter. It may be that she was fantasizing or that the statements were the product of hallucinations or of some warped revelation hidden in the mists and shadows of her mind. Perhaps the statements were the product of some twisted mental process caused by organic brain damage which resulted from her subdural hematoma.[4] Simply stated, the court has no idea of what the decedent was thinking about and therefore what she was talking about. Was she in fact reliving an assault. If so, what assault was it and when did it take place. These questions are impossible to answer because there is no one capable of answering them. With all due respect to the expert witness, this court qualified her as an expert on the subject of battered women. It did not qualify her as an expert in the workings of the mind. The court therefore is unable to determine the "event or condition" which created the nervous excitement in the victim, and therefore the statements made by her are inadmissible.
The statements are inadmissible on an additional basis. The New Jersey Rules of Evidence require that the offered statements have a proximity to the occurrence of the event or condition. The New Jersey rule, unlike the Federal rule,[5] recites that the statement must be made "in reasonable proximity to the event and without opportunity to deliberate or fabricate." The rule is set forth in the conjunctive. The statements must have been made in reasonable proximity to the event and without opportunity to deliberate or reflect. If the statement was not made in reasonable proximity to the event this is *362 dispositive of the issue and renders the statement inadmissible without reference to whether it was the product of deliberateness or reflection. Needless to say the "event" must be a discernable one and the time frame measured in real and objective terms. Any other application of the rule would render it meaningless.
Thus, in this case, even if it could be assumed that there are discernable events relating to assaults of the victim and that the utterances were made in relation to those events, the statements made in the hospital are nevertheless inadmissible because they were not made in reasonable proximity to the occurrence of the events.
For the reasons stated, the court holds that the oral statements made by the decedent during the period of her hospitalization prior to her death are inadmissible.
NOTES
[1] The decedent's final diagnosis was:

Cardiopulmonary Arrest, Chronic Bilateral Subdural Hematoma, Metabolic Alkalosis, Diabetes Mellitus, Dypothyroidism, Multiple Contusions of the Head and Body.
The death certificate lists the cause of death as subdural hematoma. The medical examiner listed the cause of death as meningitis and subdural hematoma.
[2] Cohen is employed as the chief clinical social worker at the Center for Human Relations. She holds a M.S.W. Degree and is in the process of obtaining her Ph.D. She recited her extensive experience in the diagnosis and counseling of battered women and her general familiarity with the battered woman syndrome. Cohen related that 80% to 90% of her counseling involved battered women, that she herself has counseled 100 to 1200 battered women and has acted as a consultant in another 100 or more cases. She further recited to the court her involvement in various workshops dealing with the subject of domestic violence and her own involvement in lecturing on the subject of battered women.
[3] Studies have shown that often times women who are battered by their husbands have been the victims of assaults perpetrated by a father, a member of their family or a prior spouse. Battered Women, A Psychological Study of Domestic Violence, (M. Roy ed. 1977) 60.
[4] Organic brain damage can result in a patient being confused, disoriented, hyperactive or experience stupor. There may be a reduction of cognitive reasoning and the patient may experience symptoms of delirium. As a result the patient would be likely to misidentify individuals, misperceive events and show confusion about location and time sequences.
[5] The Federal rule states: Rule 803(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.