254 N.J. Super. 339 (1992)
603 A.2d 536
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT RODRIGUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 27, 1992.
Decided March 4, 1992.
*341 Before Judges PETRELLA, R.S. COHEN and ARNOLD M. STEIN.
Wilfredo Caraballo, Public Defender, attorney for appellant (James K. Smith, Jr., Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Larry R. Etzweiler, Deputy Attorney General, of counsel and on the letter brief).
PER CURIAM.
In July 1988, a jury convicted defendant Robert Rodriguez of fourth degree aggravated assault (N.J.S.A. 2C:12-1b(4)); third degree terroristic threats (N.J.S.A. 2C:12-3); second degree possession of a handgun for an unlawful purpose (N.J.S.A. 2C:39-4a); and fourth degree possession of a weapon (Molotov cocktail) for unlawful purposes (N.J.S.A. 2C:39-4(d)). The jury returned not guilty verdicts on seven other counts[1] in the indictment. On September 23, 1988 the trial judge sentenced Rodriguez to seven years in prison, three years without parole eligibility on the conviction of possession of a handgun for unlawful purposes. Concurrent sentences were imposed on the other convictions as follows: nine months on the conviction for *342 aggravated assault; four years on the conviction for terroristic threats; and nine months on the conviction for possession of the Molotov cocktail for unlawful purpose.
On appeal, Rodriguez raises the following arguments:
I. The defendant's constitutional right not to be twice placed in jeopardy for the same offense was violated when the judge refused to accept the not guilty verdicts announced on all counts by the jury foreperson and sent the jurors back for further deliberations. (Not raised below).
II. The trial judge's ruling that the jurors could elect a new foreperson to replace the one who had announced the not guilty verdicts, violated R. 1:8-4, and served to coerce guilty verdicts in violation of defendant's constitutional rights to a unanimous verdict from an impartial jury.
III. The defendant's constitutional right to compulsory process was violated when the judge refused to continue the trial so that defendant could present certain jail records which had been subpoenaed, but not received.
Rodriguez was the victim's boyfriend, and had been living in her apartment prior to the attack. The victim testified that after Rodriguez moved into her apartment, he quit his job. This caused her to tell Rodriguez to "move out because he wasn't even making an effort of looking for another job." The victim said that on October 17, 1987, after an argument about the living arrangement, Rodriguez forced her to have sex with him. She did not immediately report this rape to the police. Around 7:00 p.m. that night she left to pick up her two children at her mother's house. At 11:00 p.m. she returned to her apartment and spent the rest of the night with Rodriguez in the apartment.
At approximately 3:00 p.m. the next day Rodriguez started another argument and threatened to scar the victim's face and burn the building down with a "cocktail bomb" (Molotov cocktail). The victim testified that Rodriguez then took a roll of aluminum foil and hit her in the face with the serrated edge of the box, knocking her to the floor. Rodriguez then took a handgun and rolled the cylinder with one loaded chamber. He pointed it at the victim's face, said he was going to kill her, and pulled the trigger four times. The gun did not fire. The victim said that she was raped again by Rodriguez who thereafter *343 refused to let her leave the apartment, threatening to shoot her if she attempted to leave.
The following morning the victim sent her daughter to school. She then got her son and left the apartment while Rodriguez slept. She went to a friend's house and telephoned her sister. After her sister's arrival, the two women took the victim's daughter to the hospital for asthma medication. After "three to four" hours in the hospital, the victim arrived with her sister at the police station about 9:00 p.m. to file a complaint.
Officer O'Connor of the Newark Police Department testified that the victim reported that Rodriguez assaulted her with a "roll of aluminum foil" and threatened her with a handgun. The victim also reported that Rodriguez threatened to burn the building down with a Molotov cocktail. She did not report the alleged sexual assaults at this time.[2]
Officer O'Connor and his partner then took the victim and her sister to the victim's apartment to look for Rodriguez. Upon entering the apartment, the officers found a green bottle with a rag in it and a container of gasoline. The officers and the two women then went to Rodriguez's brother's house on Highland Avenue, where the victim suspected that Rodriguez might be visiting. Rodriguez was spotted walking on Highland Avenue.
Officer O'Connor testified that his partner drew his weapon and confronted Rodriguez. O'Connor came up from behind and apprehended Rodriguez who was attempting to take out a handgun from the small of his back. The officer said that after being placed under arrest, Rodriguez went berserk and repeatedly threatened to kill the victim.
Rodriguez's arguments on appeal arise from two incidents which occurred at trial. First, Rodriguez claims that the *344 judge's refusal to delay the trial so that certain jail visitation records could be introduced denied him an opportunity for a fair trial. Second, Rodriguez objects to the manner in which the jury deliberations were conducted.

I.
After the State rested, Rodriguez's attorney notified the court that she would need some time to produce jail records indicating that the victim twice visited Rodriguez in jail, after the incident occurred. The defense attorney stated that Rodriguez had informed his first attorney in the Public Defender's office about this earlier in the preparation of the case, but she only learned of the information that morning. At approximately 11:00 a.m. the judge dismissed the jurors, instructing them to return in 30 minutes. During the recess the judge and the attorneys reviewed the proposed instructions and the State moved its exhibits into evidence. At 11:30 a.m. the judge allowed the defense attorney to phone the investigator to inquire about the availability of the jail records. However, defense counsel was unable to contact the investigator. After a brief colloquy regarding the relevance of the jail records, the judge denied defense counsel's application to delay the trial and the jury was brought in. The judge noted that this information could have been used on cross-examination of the victim and that the lack of information was attributable to the Public Defender's office.
Apparently, the investigator returned defense counsel's telephone call during her summation. The record indicates that the jail records would have been available at 3:40 p.m.[3] The judge stated:

*345 The point is, you know, I'm responsible for running this here, I try to run it as fairly as I can, I try to be as productive too. You can't see, well, we got a whole other week now to try this and we're going to wait for that and the like. Waiting from quarter to 11, 11 o'clock until roughly 20 to 4 before you have the exact information would mean that I'd have to dispose of these jurors, that I'd have to  I've got to do something with them. You certainly can't keep them sitting here, you certainly can't keep them in the jury room, nothing else we can do with them and the like, can't deliberate. What do you do with it? I feel that in order to do this properly, due process, if you will, is that that's the reason why I had to deny, because I just felt that if you knew about this, not you, Ms. Kay, but somebody knew it in your office, it goes back to October of 1987, that's a lot of time in my view, and that's the reason why I denied any application.
Rodriguez argues that the judge erred in refusing to delay the trial so that the attorney could produce jail records indicating that the victim and certain of her relatives visited him ten days after his arrest. We gather that it was defendant's attorney's intent to offer the documents in evidence in defendant's case. Rodriguez did not testify.[4]
There is no doubt that Rodriguez has a constitutional right to compulsory process to subpoena witnesses. State v. King, 164 N.J. Super. 330, 337, 396 A.2d 354 (App.Div. 1978), certif. denied, 81 N.J. 54, 404 A.2d 1154 (1979). A concomitant right is to have a reasonable time to effect service of process and obtain compliance therewith. State v. Smith, 66 N.J. Super. 465, 468, 169 A.2d 482 (App.Div. 1961), affirmed, 36 N.J. 307, 177 A.2d 561 (1962).
In State v. Smith, we concluded that in light of other evidence supporting guilt, the trial judge's exercise of discretion in not granting the adjournment did not result in a manifest injustice. We there said:
It has been held [State v. Lotegano, 12 N.J. Misc. 49 [169 A. 529] (S.Ct. 1933), error dismissed, 113 N.J.L. 176 [173 A. 136] (E. & A. 1934)] that where *346 defendant was being tried for robbery and made application at 3:30 p.m. on the afternoon of the trial date to produce his sister as a witness, the court was justified in refusing an adjournment on the grounds that counsel knew, or should have known, whether this witness was required prior to trial. [State v. Smith, supra (66 N.J. Super. at 468, 169 A.2d 482].
In the case before us, the judge's refusal to grant additional time to produce the documentary evidence was error. It would have been better to have discharged the jury for the balance of the day and concluded the trial the next trial day. Copies of the documents sought should have been available quite readily. In any event, in order to set aside a conviction, it must appear that the judge's exercise of discretion resulted in prejudice. See State v. Kyles, 132 N.J. Super. 397, 402-403, 334 A.2d 44 (App.Div. 1975); State v. Smith, 87 N.J. Super. 98, 105-106, 208 A.2d 171 (App.Div. 1965).
Here, admission of the jail records, if in fact they established what they were alleged to contain, would not have changed the result of the trial. The error was harmless. Indeed, Rodriguez could have explored the issue on cross-examination of the victim even prior to receipt of the records. Of course, examination of the victim in regard to visits could have resulted in the jury learning that Rodriguez's brother was currently under indictment for terrorizing the victim. Moreover, the jury by its verdict accepted the victim's testimony that she was afraid of Rodriguez at the time the events occurred in the apartment, which is the crucial time relative to the charges considered by the jury. The jury acquitted Rodriguez of aggravated sexual assault and attempted murder charges. However, the jury obviously accepted the fact that the victim was fearful of Rodriguez despite the fact that after the first incident she returned to the apartment while he was there. Any inferences that could have been drawn from any visit or visits with Rodriguez at the jail, if they occurred, are speculative and would not have affected the verdict.

*347 II.
After the jury reported that it had arrived at a verdict, each charge of the eleven count indictment was read to the foreman who responded not guilty. After the not guilty response to count nine (possession of a handgun), the prosecutor brought a disruption in the jury box to the attention of the judge. The judge acknowledged this but he continued to receive the answers to the balance of the indictment counts. After this the judge stated:
I have to make an observation, we heard what we heard and we put on the record, but I seem, [sic] unless I'm wrong, some shaking their heads, I would suggest and I think I take it upon myself as a Judge and I think I have the authority to do that, that you go back and that you look at it, not that you look at your verdict because obviously if that's your verdict, that's up to you, I'm not interfering with that, I want you to know that, but apparently there has been shaking of heads. I would like you to go back and resolve whatever you have to resolve concerning that and then come back out again and I would ask you to do that, please.
After a brief recess the jurors returned to the courtroom. The judge told them that he did not mean to intimidate anyone by sending them back, but that the shaking of some of the jurors' heads indicated a lack of unanimity. The foreman proceeded to return guilty verdicts on counts three (aggravated assault), four (terroristic threats), eight (possession of a weapon (tin foil) for an unlawful purpose), nine (possession of a weapon (handgun) for an unlawful purpose) and ten (possession of a weapon (Molotov cocktail) for an unlawful purpose). After both parties requested a polling of the jury, juror number eight stated that he did not agree with the verdicts. The judge then sent the jury back again to continue deliberations.
Shortly thereafter, the judge received a note from the jury asking whether the foreman could be changed. Despite defense counsel's objection the judge allowed the jury to elect a foreman. In the presence of the jury the judge stated, "I feel that in spite of what the rule says, that there are always exceptions, so long as they're done for the good, and as long as *348 they're done for truth and justice ..." The jury was again sent into the jury room to continue deliberations.
Within a brief time the jury returned with a new foreman and a new verdict. Guilty verdicts were again pronounced on counts three, four, nine and ten. The final verdict on count eight was changed from guilty to not guilty. The jury was polled and the verdict was unanimous.
In light of the obvious disagreement shown by the jurors with the result initially announced by the original jury foreman there was no mistaken exercise of discretion when the judge sent the jury back to continue deliberations. No polling was necessary under the circumstances. Double jeopardy principles were not brought into play since the court had not accepted the jury verdict nor polled the jury as of that time. Indeed, if the judge had polled the jury (as was done when the verdict was reported following the first re-deliberation), and a juror indicated disagreement with the verdict, he would have been required, as he did, to have the jury re-deliberate.
United States v. Musto, 540 F. Supp. 318, 331 (D.N.J. 1982), affirmed sub nom. United States v. Aimone, 715 F.2d 822, 832 (3d Cir.1983), cert. denied, 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984), does not support defendant's contention that physical displays by a juror, as opposed to verbal disaffirmance of the verdict, cannot require further deliberation, absent a formal polling of the jury. In Musto, the defendant was asking the court to disregard a juror's stated agreement with the verdict elicited during the polling of the jury, where the juror cried when registering her agreement. 540 F. Supp. at 341-342. There is no need to go beyond the juror's affirmation of concurrence in the verdict.
A jury verdict is not final "until the deliberations are over, the result is announced in open court, and no dissent by a juror is registered." United States v. Rastelli, 870 F.2d 822, 834 (2d Cir.1989), cert. denied, Agar v. U.S., 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989), citing United States v. *349 Taylor, 507 F.2d 166, 168 (5th Cir.1975); see also United States v. Nelson, 692 F.2d 83, 84-85 (9th Cir.1982); United States v. Chinchic, 655 F.2d 547, 550 (4th Cir.1981), cert. denied, Melia v. U.S., 471 U.S. 1135, 105 S.Ct. 2674, 86 L.Ed.2d 693 (1985); United States v. Love, 597 F.2d 81, 85 (6th Cir.1979); 3 Wright, Federal Practice & Procedure: Criminal § 517 at 32 (2d ed. 1982). Further, under New Jersey Law it is well established that "the accused has an absolute right to have the jury polled." State v. Schmelz, 17 N.J. 227, 232, 111 A.2d 50 (1955), citing, State v. Vaszorich, 13 N.J. 99, 126, 98 A.2d 299 (1953), cert. denied, 346 U.S. 900, 74 S.Ct. 219, 98 L.Ed. 400 (1953). Thus, it is clear under our court rules, see R. 1:8-10, and the decided case law that this State adheres to the principle that a jury verdict is not final simply because it is announced by the foreman. See, State v. Schmelz, supra (17 N.J. at 232, 111 A.2d 50); State v. Vaszorich, supra (13 N.J. at 126, 98 A.2d 299); see also Butler v. Acme Markets, 89 N.J. 270, 283, 445 A.2d 1141 (1982) (trial court may properly mold a jury verdict in consonance with the intent of the jury). Thus, R. 1:8-10 provides:
If verdict is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court's motion, and it shall be polled in every civil action if the verdict is not unanimous. If the poll discloses that there is not unanimous concurrence in a criminal action or concurrence by five-sixths in a civil action, the jury may be directed to retire for further deliberations or discharged.
Moreover, defendant's failure to object to the jury redeliberation here was a waiver of any claimed defect. Rodriguez concedes that had the procedure of a jury poll been followed and a dissent registered, it would have been well within the judge's discretion to require further deliberations. Failure to timely object to either the lack of a poll of the jurors or a defect in the polling constitutes a waiver of rights. See State v. Ward, 57 N.J. 75, 79, 270 A.2d 1 (1970).
Finally, we address Rodriguez's argument that the trial judge's ruling that the jury could elect a new foreperson violated 1:8-4 and may have served to coerce the original *350 foreperson into guilty verdicts in violation of his constitutional right to a unanimous verdict by an impartial jury. Although the cited rule does not contemplate the replacement of a juror, it was certainly within the ambit of the judge's discretion, particularly in light of R. 1:1-2 which authorizes relaxation of the rules, to appoint a new foreperson where there were obvious difficulties with the member of the jury originally designated. There was no prejudice to Rodriguez since he got the benefit of one less conviction than was stated in the second report of the original foreperson. Hence, we perceive no coercive influence on the original foreperson or on any juror by either the designation of a new foreperson or the additional deliberations.
Affirmed.
NOTES
[1] Rodriguez was acquitted of charges of second degree sexual assault, first degree attempted murder, first degree aggravated sexual assault, second degree sexual assault, third degree criminal restraint, third degree possession of a weapon (a roll of tin foil) for unlawful purpose, and fourth degree risking wide-spread injury or damage.
[2] The victim reported the sexual assaults to Officer Sanchez of the Newark Police Department on October 20, 1987.
[3] On July 25, 1988 the attorney represented on the record that she had been furnished with copies of jail records that showed that the victim was a visitor to the jail to see Rodriguez on October 28 and October 29 [year not stated, presumably 1987]. She said there were also indications that some of "her relatives were also visitors during the months of October and early November."
[4] We need not deal with evidence questions regarding authenticity or the manner in which defendant intended to establish that it was the victim who actually visited the jail if her name was on the records, in light of the fact that the defense attorney only intended to offer the document into evidence at the close of the case.