731 A.2d 1218 (1999)
323 N.J. Super. 40
Heather TRUCHAN, Plaintiff-Appellant,
v.
SAYREVILLE BAR AND RESTAURANT, INC., t/a Sayreville Bar and Restaurant, John V. Kelly, and John Doe (1-15) Said Name Being Fictitious, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1999.
Decided July 9, 1999.
*1220 Barry M. Epstein, Newark, for plaintiff-appellant (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys; Mr. Epstein, Stuart M. Feinblatt and Rhonda Sobral O'Toole, on the brief).
Daniel S. Jahnsen, Shrewsbury, for defendant-respondent Sayreville Bar and Restaurant, Inc., (Bolan Jahnsen, attorneys; Terrence J. Bolan, on the brief).
Defendant-Respondent John V. Kelly did not file a brief.
Before Judges PRESSLER, KLEINER and STEINBERG.
*1219 The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiff Heather Truchan appeals from a judgment entered, pursuant to a jury verdict, in favor of defendant Sayreville Bar and Restaurant, Inc. (Sayerville Bar), and from an order denying her motion for a new trial. We reverse.
Plaintiff sustained serious personal injuries as a result of an accident that occurred on December 10, 1993, at approximately 5:35 p.m. She was driving on Cheesquake Road in Sayreville, New Jersey at the time of the accident. As she drove around a curve she suddenly saw headlights on her side of the road. There was no time to react and the vehicle, a truck owned and operated by defendant John Kelly, struck her head-on. The impact was severe. It took rescue workers using the "Jaws of Life" an hour to free her.
Peter Danser, a fellow employee of Kelly, testified for plaintiff. He said that he would go out with Kelly "a couple of nights a week" after work and "have some drinks", usually at the Sayreville Bar. He testified that on December 10, he and Kelly were advised that they were being laid off for the slow winter season. They went to a local bar where they each consumed one beer before going to the Sayreville Bar. Danser said that he saw Kelly drink between six and seven mugs of beer while they were there. He further testified that as he was getting ready to leave he observed that Kelly was "loud in conversation and getting boisterous". He also testified that Kelly kept repeating himself in conversation and his eyes were "a little glassy, like glazed over". He explained that Kelly "had that stare, you know, when you get drunk". When Danser left the Sayreville Bar, Kelly was still drinking. Finally, Danser testified that if the bartenders had been paying attention "they would have seen the signs".
Plaintiff also called Patrolman Anthony DonnaMaria as a witness. DonnaMaria was the first officer at the scene. DonnaMaria testified that when he observed Kelly at the scene he was dazed, staggering, mumbling, and leaning on his truck. According to DonnaMaria, Kelly "appeared quite intoxicated". He had a vacant stare in his eyes and an extremely strong odor of alcoholic beverage on his breath. DonnaMaria further testified that Kelly was falling; was on his hands and knees; was swaying and sagging, grasping for support; *1221 was unable to stand and was continually leaning for balance when he was upright; that his speech was "slobbering", slurred and slow and his demeanor indifferent; that his eyes were very watery and bloodshot, his clothing was "mussed" and dirty, and his face was pale. Kelly was taken to the hospital where a blood sample was drawn. Subsequent tests revealed his blood alcohol content to be .201.
Plaintiff also produced Dr. Richard Saferstein, an expert in forensic science, toxicology and alcohol. He opined that Kelly's blood alcohol level would have been .10 at 5:05 p.m. and that he would have begun exhibiting signs of visible intoxication at that time. On cross-examination Saferstein conceded that different individuals act differently with the same blood alcohol level and that habitual use of alcohol develops a tolerance requiring larger doses to produce the characteristic effects of intoxication. Thus, if Kelly had developed such a tolerance, he would not have necessarily displayed visible signs of intoxication at a level of .10. However, Saferstein further testified that a perceptive observer of a person who has reached a level of .10 percent should be able to tell that that person is visibly intoxicated and should not be served additional alcohol.
Kelly, who was uninsured, was served with a summons and complaint but did not file an answer. Sayreville Bar called him as a witness. Kelly claimed that the accident occurred because he was distracted while driving. He said he left the Sayreville Bar at approximately 5:30 p.m., five minutes prior to the accident. He gave the following version of the accident: "Prior to the accident a vehicle had stopped rather abruptly in front of me. Pulled off to the side of the road and then made a U-turn right there. And from the maneuvering of the vehicle one of my tools had rolled up from underneath my seat I had stored in the back seat area. So I reached down to get it as I was driving." He said he had to reach pretty far down to get the tool and that led him to take his eyes off the road. According to Kelly his vehicle stayed straight but the road curved and that caused him to go into the on-coming lane and collide head-on with plaintiff, in her lane of travel. Kelly also said he was upset about losing his job that day. He testified that he had three mugs of beer at the Sayreville Bar, and was not intoxicated when he left.
The jury, after a four day trial, found no liability against Sayreville Bar, finding Kelly to be solely responsible for the accident. The jury awarded plaintiff $512,500 in damages against him.
On this appeal plaintiff raises the following arguments: (1) the trial judge incorrectly excluded testimony concerning Kelly's degree of intoxication and erratic driving immediately prior to the accident; (2) the liability verdict was so contrary to the evidence presented that there was a miscarriage of justice under the law entitling her to a new trial; (3) the trial judge incorrectly permitted Sayreville Bar to characterize itself as a family place or family restaurant in order to suggest that it did not serve a visibly intoxicated patron; (4) the trial judge erred in dismissing plaintiff's common law causes of action; (5) the trial judge erred in dismissing plaintiff's claim for punitive damages; (6) the jury's actions showed confusion and a refusal to follow the trial court's instruction necessitating reversal; and (7) a new trial should be granted because the damage verdict was so disproportionate and inadequate under the evidence that to sustain the award would be manifestly unjust.[1]
We first consider plaintiff's contention that the trial judge erred in excluding testimony concerning Kelly's driving immediately prior to the accident. At the *1222 scene of the accident DonnaMaria interviewed Eric Shemper and Nancy Place, eye witnesses to the collision. Plaintiff sought to introduce what Shemper and Place told him contending, over Sayreville Bar's objection, that their statements were admissible as excited utterances. See N.J.R.E. 803(c)(2). At the N.J.R.E. 104(a) hearing then held to determine the admissibility of the statements, DonnaMaria testified that he spoke to Shemper and Place approximately twenty minutes after he arrived at the scene. He described them as "angry", excited, and in an emotional state. DonnaMaria said that Shemper told him that a vehicle passed him on the left just a few hundred yards before the location of the accident traveling at a very high rate of speed on the wrong side of the road in a no-passing zone when it struck plaintiff's vehicle head-on. DonnaMaria also testified that Place was excited and angry when he spoke to her. He said that Place's version was the same as Shemper's and that she saw defendant's vehicle coming up behind her at a very high rate of speed. She saw it go around the curve on the wrong side of the road and strike plaintiff's vehicle head-on.
In sustaining the objection the trial judge ruled as follows:
I find that the testimony from the police officer indicates that this was a standard investigation. He spoke to these people and took their statements at least 20 minutes after he arrived. And I guess you'd have to add a few minutes to that between the time hethe accident occurred, someone notified the headquarters and headquarters notified him and he arrived at the scene. There's obviously an opportunity to deliberate by the witnesses, an opportunity for them to discuss it among themselves and there's no proof requiredthere's no proof as required by the rule that these declarants were still under the stress or excitement of seeing the accident. The objection is sustained. Bring the jury in.
We disagree with the judge's conclusion. An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate". N.J.R.E. 803(c)(2). In determining whether a statement is admissible as an excited utterance the court must decide the preliminary question of whether the defendant had any opportunity for deliberation, reflection, or misrepresentation before he made the statement or whether the utterance was spontaneous and made solely under the stress of excitement. See State v. Williams, 106 N.J.Super. 170, 172, 254 A.2d 538 (App.Div.), certif. denied, 55 N.J. 78, 259 A.2d 228 (1969), cert. denied, 397 U.S. 1057, 90 S.Ct. 1405, 25 L.Ed.2d 675 (1970). The factors to be considered in such a determination include: (1) the amount of time that transpired between the initial observation of the event and the subsequent declaration of the statement; (2) the circumstances of the event; (3) the mental or physical condition of the declarant; (4) the shock produced; (5) nature of the statement; and (6) whether the statement was made voluntarily or in response to a question. Ibid.; Lieberman v. Saley, 94 N.J.Super. 156, 161, 227 A.2d 339 (App.Div.1967). The mere fact that the statement is not made contemporaneously or immediately after the event does not, in isolation, render the statement inadmissible. McCormick on Evidence, § 272, p. 218 (4th ed.1992). Even where the time interval between the event and the statement is long enough to permit reflective thought, the statement is not necessarily excluded if the proponent can establish that the statement was nevertheless made under the stress of the event without reflective thought. If the totality of the circumstances warrant an inference that the statement was made as an uncontrolled response to the shock of the event before reasoned reflection could have stimulated the response, it is admissible. See Cestero v. Ferrara, 57 N.J. 497, 504, 273 *1223 A.2d 761 (1971). The critical element is the presence of a continuing state of excitement that contraindicates fabrication and provides trustworthiness. State v. Lyle, 73 N.J. 403, 413, 375 A.2d 629 (1977). We conclude that if the statement is made while the declarant is under the stress of excitement caused by an event or condition, the statement is admissible because the declarant truly did not have an opportunity to deliberate or fabricate. The stress contraindicates an opportunity to deliberate or fabricate. The lapse of time is merely a factor to consider, together with all the other factors set forth in Williams, supra, and Lieberman, supra, in making the ultimate determination as to admissibility. Thus, the element of time is important, but not controlling. Riley v. Weigand, 18 N.J.Super. 66, 86 A.2d 698 (App.Div.1952). In Williams, the statement was made approximately twenty minutes after the event. See also Atamanik v. Real Estate Management, Inc., 21 N.J.Super. 357, 363-64, 91 A.2d 268 (App.Div.1952) (a delay of fifteen minutes between the occurrence of the event and the statements sought to be introduced did not render the statement inadmissible); State v. Ramos, 203 N.J.Super. 197, 204-05, 496 A.2d 386 (Law Div.1985), aff'd, 226 N.J.Super. 339, 544 A.2d 408 (App.Div.1988) (statements made two weeks after sexual misconduct were admissible since the victim was still under the stress of the event when the statement was made); State v. Bass, 221 N.J.Super. 466, 477-82, 535 A.2d 1 (App.Div.1987), certif. denied, 110 N.J. 186, 540 A.2d 182 (1988) (the excitement of a three and one-half year old child of having been burned on the buttocks continued for weeks or, perhaps months, thereafter because of his immediate reference to the incident when someone who was holding him on her lap and lit a cigarette lighter). Moreover, the fact that a statement is made in response to a question does not render the statement inadmissible if the declarant is still in a state of excitement caused by the event. State v. Simmons, 52 N.J. 538, 542, 247 A.2d 313 (1968), cert. denied, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969).
We recognize that the trial judge is accorded a broad measure of discretion in determining whether to admit a statement as an excited utterance. See State v. Lazarchick, 314 N.J.Super. 500, 524, 715 A.2d 365 (App.Div.), certif. denied, 157 N.J. 546, 724 A.2d 804 (1998); Fagan v. Newark, 78 N.J.Super. 294, 304, 188 A.2d 427 (App.Div.1963). However, in order to permit appellate review a trial judge must set forth his findings of fact and conclusions of law. See R. 1:7-4(a). Here, the judge's findings were terse and insufficient to permit us to determine whether he mistakenly exercised his discretion in excluding the statements. Nevertheless, he appears to have incorrectly relied exclusively on the lapse of time in concluding that the statements were inadmissible. We are satisfied that the statements were admissible. They were made shortly after the incident at a time when the declarants came upon the scene of an extremely serious accident. There was more than ample evidence to conclude that the witnesses were still under the stress of the event when they related the defendant's method of operation, particularly in light of the fact that they observed the head-on collision. DonnaMaria testified that the witnesses were excited. The judge made no finding that he disbelieved that testimony, focusing only on lapse of time. We therefore conclude that the judge mistakenly exercised his discretion in excluding the statements. They should have been admitted.
Moreover, we cannot consider the error harmless. The critical issue regarding the Sayreville Bar's liability was whether it served alcoholic beverages to Kelly while he was visibly intoxicated. See N.J.S.A. 2A:22A-5(b). Kelly claimed he was not intoxicated and the accident occurred due to a curve in the road which he did not see because he was reaching for a tool. The proposed testimony of Shemper and Place clearly and substantially contradicted *1224 Kelly's version. If their testimony was believed, the jury might well have determined that Kelly was intoxicated when he was driving and was visibly intoxicated when served alcoholic beverages at the Sayreville Bar. We agree with plaintiff that since the accident took place only five minutes after Kelly left the Sayreville Bar, his driving between the time he left the bar and the accident was highly probative of his condition when he was driving, and while he was at the bar.[2] Accordingly, the exclusion of the excited utterance testimony was clearly capable of producing an unjust result. State v. Macon, 57 N.J. 325, 338, 273 A.2d 1 (1971).
For guidance of the parties upon retrial we next consider plaintiff's contention that the trial judge erred in permitting Sayreville Bar to characterize itself as a family place or family restaurant and contrast it with Johnnie G's that it characterized as a "dive". We agree that that testimony was irrelevant. Relevant evidence is defined as evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action. See N.J.R.E. 401. Whether Sayreville Bar was a "family restaurant" and Johnnie G's, or any other local establishment where Kelly and Danser had been drinking earlier was characterized as a "dive" or a "shot and beer joint" does not have a tendency in reason to establish that Sayreville Bar would be less likely to serve a visibly intoxicated person. Even if marginally relevant that evidence would be substantially outweighed by the risk of undue prejudice or misleading the jury. See N.J.R.E. 403(a). On retrial, both parties must refrain from these characterizations or arguments to the jury.
We next consider plaintiff's contention that the trial judge erred in dismissing plaintiff's common law causes of action before trial commenced. In her amended complaint, plaintiff asserted common law claims for wrongful hiring of tavern employees (fourth count); wrongful supervision of tavern employees (fifth count); failure to implement the bar's obligation, before service of alcoholic beverages, to identify patrons at risk to become intoxicated (sixth count); and inappropriate exercise of the obligation to maintain the tavern premises as a safe environment after completion of actual service of alcoholic beverages (seventh count). The judge granted defendant's motion, concluding that the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (the Act), N.J.S.A. 2A:22A-1 to -7 was the exclusive civil remedy for personal injuries resulting from negligent service of alcoholic beverages. See N.J.S.A. 2A:22A-4. The Act specifically provides that it "shall be the exclusive civil remedy for personal injury ... resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server". Ibid. Plaintiff contends that common law claims, predicated on theories other than negligent service of alcoholic beverages, are not foreclosed by the Act.
By adopting the Act, the Legislature intended to address drastic increases in the cost of insuring tavern owners for liability by defining the limits of such liability. See N.J.S.A. 2A:22A-2; Steele v. Kerrigan, 148 N.J. 1, 15, 689 A.2d 685 (1997). The basis for the common law claims asserted by plaintiff was her contention that the Sayreville Bar permitted Kelly to leave the premises when he was drunk. We agree with the plaintiff that some common law causes of action survive the Act. See Steele, supra, 148 N.J. at 35, 689 A.2d 685 where the Supreme Court implicitly recognized the continued viability *1225 of the theory of negligent supervision. See also, Cassanello v. Luddy, 302 N.J.Super. 267, 271-74, 695 A.2d 325 (App.Div. 1997) (proprietor of a business premises owes a duty to patrons to provide a reasonably safe place to do that which is within the scope of the invitation and therefore a tavern owner may be responsible to a patron who was attacked by other patrons after he had left the bar where a security person had intervened to stop an altercation between the patrons while still inside the tavern). However, as best we can discern from this record, the common law claims plaintiff sought to assert against the Sayreville Bar all arose out of, and were related to, the negligent service of alcoholic beverages and are therefore barred by the exclusivity provisions of the Act. See N.J.S.A. 2A:22A-4. The trial judge correctly dismissed those claims.
We have carefully considered the record, the briefs filed, the applicable law and the arguments of counsel and conclude that plaintiff's contention that the trial judge wrongfully dismissed the punitive damage count is clearly without merit. See R. 2:11-3(e)(1)(E).
Finally, we determine that the damages issue need not be relitigated since we conclude that the liability issues and the damages issues were fairly separable. See Weiss v. Goldfarb, 295 N.J.Super. 212, 228, 684 A.2d 994 (App.Div.1996), rev'd on other grounds, 154 N.J. 468, 713 A.2d 427 (1998).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The parties have entered into a stipulation of dismissal of that portion of the appeal regarding the adequacy of the damage verdict. Accordingly, we consider that issue to be abandoned on appeal.
[2] In light of our conclusion to reverse and remand for a new trial, we need not consider plaintiff's additional argument that the verdict was against the weight of the evidence and constitutes a miscarriage of justice under the law. In addition, we need not consider plaintiff's contention that we should order a new trial because the jury's actions show confusion and a refusal to follow the trial court's instruction. However, we observe that those contentions are clearly without merit. See R. 2:11-3(e)(1)(E).