790 A.2d 945 (2002)
347 N.J. Super. 497
STATE of New Jersey, Plaintiff-Respondent,
v.
John CLARK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 2001.
Decided February 7, 2002.
*947 Peter A. Garcia, Acting Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, of counsel and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent (James F. Smith, Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, EICHEN and COLLESTER.
*946 The opinion of the court was delivered by COLLESTER, J.A.D.
On October 15, 1997, defendant-appellant John Clark was charged in Atlantic County Indictment No. 97l-10-2439 with second degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(1) (count one); third degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(2) (count two); second degree possession of a weapon (knife) for an unlawful purpose, contrary to N.J.S.A. 2C:39-4 (count three); and third degree possession of a weapon (knife) under circumstances not intended for lawful use, contrary to N.J.S.A. 2C:39-5d (count four). Following a jury trial, defendant was convicted of all charges. The sentencing judge granted the State's application to sentence under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to find defendant a persistent offender under N.J.S.A. 2C:44-3a. Defendant received an aggregate sentence of eighteen years with a parole ineligibility of eighty-five percent pursuant to NERA. Defendant appeals his conviction and sentence. We reverse and remand for a new trial.
The salient trial testimony was as follows. On July 9, 1997, at about 8:30 p.m. defendant John Clark and Bruce Reas were in Reas' Brigantine apartment when they got into an argument. As a result of 9-1-1 calls from neighbors, the police arrived. Officer Thomas Flickinger saw the defendant sitting on the lawn holding his head with one of his eyes swollen, and an abrasion on his forehead. The man, later identified as Robbie Sponsel, was "screaming, hollering ... on the border of hysterical." He told the officer that the man lying on the front lawn had stabbed a man who was in the back yard. Sponsel led Flickinger to the back of the house where Reas was standing with blood running from his neck to his knees and holding a torn shirt to his neck to stop the bleeding from a two inch puncture wound. Flickinger described Reas as "agitated and uncooperative." He gave him Miranda[1] warnings.
Sponsel told Flickinger that there had been an argument between defendant and Reas over repairs to their boat which led to a fist fight. Defendant ran back into the apartment, came out with a knife and stabbed Reas in the neck. Defendant then drove off but returned a minute or two later and pulled up on the front lawn. As defendant got out of the car, Reas hit him in the face with a brick and ran to the back of the house.
Officer Flickinger tried to assist Reas, who was walking around the back yard. He pushed him down on a bench and held a shirt over the wound until Officer Timothy Reed took over and the ambulance arrived. Testifying for the defense, Officer *948 Reed said that he repeatedly asked Reas what happened and Reas replied that "it was an accident." Both Reas and the defendant were taken to the hospital for treatment.
A rusty, unsheathed bayonet with blood on its tip was found on the front passenger seat of defendant's car, and its scabbard was located hanging by the front door in Reas' apartment. Drops of blood were seen on a kitchen chair and a kitchen knife. A blood stained towel was found by the stoop. An unidentified man and woman in the apartment told police that they had not seen anything.
Further investigation led police to talk to John Cutillo, a seventy-four year old man who lived next door to Reas' building. Although initially reluctant to talk to police, Cutillo said he was sitting on his deck when he saw the defendant and Reas rush out of the apartment punching each other. He said the defendant ran back inside and returned to strike Reas in the neck with a "big knife." While Cutillo testified to this effect at trial, neither Reas nor Sponsel were called as witnesses.
On appeal defendant makes the following arguments:
POINT IROBBIE SPONSEL'S HEARSAY STATEMENT WAS IMPROPERLY ADMITTED AS AN EXCITED UTTERANCE, VIOLATING DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.
POINT IITHE PROSECUTOR'S FAILURE TO PROVIDE DEFENSE COUNSEL WITH THE ADDRESS AND TELEPHONE NUMBER OF ROBBIE SPONSEL WAS A DISCOVERY VIOLATION, AND THE PROSECUTOR'S REFUSAL TO PROVIDE THE INFORMATION AND THE COURT'S REFUSAL TO DIRECT THE PROSECUTOR TO DO SO DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT IIITHE TRIAL COURT'S REFUSAL TO GRANT A CONTINUANCE WAS AN ABUSE OF DISCRETION AND DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT IVTHE PROSECUTOR AND THE BRIGANTINE POLICE ENGAGED IN REVERSIBLE MISCONDUCT. (Not Raised Below.)
POINT VDEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE.
It is undisputed that neither the Brigantine police reports nor any other pretrial discovery made mention of Robert Sponsel. The case went to trial on November 3, 1999, more than two years after the incident and a month shy of two years from the date of indictment. Throughout this time defendant was never given Sponsel's name, his address or any information respecting this important eyewitness.
The trial prosecutor represented that she knew nothing of Sponsel until the late afternoon of November 1 when she was preparing the police witnesses for trial. She called defense counsel the same day and left word on his answering machine. The following day was election day, a legal holiday. Defense counsel represented that he was not advised as to identity or knowledge of Sponsel until ten minutes before opening statements, but he made no application for a mistrial or a continuance. The prosecutor stated that Sponsel had been subpoenaed, and would testify for the State. The prosecutor received permission to inquire of the sworn jurors as to whether any of them knew Robert Sponsel. None did.
No mention was made of Sponsel in opening statements. However, Detective Raymond Cox, the State's first witness, *949 testified he saw Sponsel at the scene and that "he appeared to be upset and I guess nervous about what happened ... He was pacing around, and he was throwing his hands up in the air, and I overheard some of the comments he was making to other officers." Cox added that Sponsel's comments were "contemporaneous with the incident that just happened ... within a minute of the 9-1-1 calls." When the prosecutor asked Cox what Sponsel told him, defense counsel objected on the ground of hearsay. The trial judge ruled Sponsel's statements admissible under the excited utterance exception to the hearsay rule, N.J.R.E. 803(c)(2)(1).
Defense counsel then moved to exclude any testimony by Sponsel or the use of any of his statements since his name was not mentioned in any discovery. The trial judge denied the application for the following reasons:
[F]rankly, under the circumstances, I don't think there's anyshould be any valid objection to it. There wasthere obviously and concededly wasn't any violation of the discovery rules by the prosecutor. Quite often, it appears that things are not in police reports that might appropriately be in police reports... the prosecutor has indicated that what Sponsel said is not substantially different from what other witnesses said... it would appear that it's admissible under [N.J.R.E. 803(c)(2)(1) ] and quite frankly I don't see any prejudice to the defense in allowing the testimony in.
After Officer Flickinger testified as to what Sponsel told him, Detective Sergeant Joseph Chiarolanza testified that he also encountered Sponsel at the scene.
A. I just asked him, I said Robbie-like I had known him quite a few years. I said what happened here? He goes Joe, I really don't want to get involved. I said fine. I'll talk to you later. That was the extent of it.
Q. Somehow you knew Mr. Sponsel?
A. Oh, yeah.
Q. How do you know Mr. Sponsel?
A. From the island. He's beenprobably born and raised there.
Q. Okay. Born and raised in Brigantine?
A. Yeah.
Q. And about how old was Mr. Sponsel?
A. In his mid-twenties.
Q. Did you know him socially?
A. Occasionally, I'd see him out in the boat. He was a fisherman. We all were.
Q. But you knew him by first name even before you arrived at the scene, is that correct?
A. Yes.
Q. You knew this trial was coming up.
A. Yes.
Q. Okay. And even though you knew this trial was coming up-well, first of all, when is the last time you saw Mr. Sponsel?
A. About three weeks ago.
Q. About three weeks ago?
A. Yeah.
Q. And how often have you seen him in the last two years and four months?
A. Oh, I don't know. It'she'll be in one boat, I'll be in another, and we'll just wave. That's about basically it. Probably quite a few times.
On the second trial day the prosecutor rested without calling Sponsel as a witness. Defense counsel moved for dismissal of the indictment, arguing that the prosecutor had improperly produced Sponsel's hearsay testimony before the jury without producing him as a witness and subjecting *950 him to cross-examination. The trial judge denied the application, stating:
[t]here was no discovery violation, because the information had not been known to the prosecutor. [O]bviously, the Brigantine Police Department arguably could be more diligent and thorough in the preparation of their reports. But the information was not in the report.
The evidence came in as a so-called excited utterance. So it's in the case. The fact that Sponsel is not here and apparently won't be produced by the state is of no moment. It came in as substantive evidence, and I would also note ... [i]t wasn't particularly significant... what [Officer Flickinger] testified to as to what Sponsel said, particularly when you consider that we have in the case the testimony of Mr. Cutillo who furnished great detail about what-what he observed. There's nothing inconsistent really between what Sponsel allegedly told to the police officer and what Mr. Cutillo testified.
So he wouldn't have beenthe fact that he's not here is notnot of that great moment.
Defense counsel then demanded the prosecutor supply him with Sponsel's address and phone number, but the prosecutor refused, saying she had no duty to provide the information.[2] The judge then denied the defense motion for a continuance for one trial day in order for the defense to find and subpoena Sponsel.
I'm not going to grant a continuance until Monday. [T]his person's identity has certainly been known, and obviously if you wanted to launch an inquiry and try to find him it could have been done before this.
The judge placed great reliance on his finding that any testimony by Sponsel would be merely cumulative.
If I thought that this was really that significant, I might grant a postponement. But in looking at the testimony of Officer Flickinger, he testified that [he] saw Robert Sponsel. He was on the boarder of hysteria. He was screaming. He was hollering, saying something about a man in the back bleeding. He said he saw two guys get into it. The man on the lawn had stabbed the other man in the front yard. The man on themymy notes are not totally clearon the front lawn had gotten a knife from the house, went into the house, stabbed him with a knife, left. The other person had a brick and had struck the defendant with the brick.
There's nothing different about what he'swhat he was related as saying really than Cutillo. So he's just a cumulative type witness. That's all he is.
Defendant argues that Officer Flickinger's testimony of what Sponsel told him was inadmissible hearsay and its admission violated his constitutional right of confrontation. We note initially that a trial judge is given a broad measure of discretion in the determination as to whether to admit a witness's statement as an excited utterance, State v. Lazarchick, 314 N.J.Super. 500, 524, 715 A.2d 365 (App.Div.), certif. denied, 157 N.J. 546, 724 A.2d 804 (1998); Fagan v. City of Newark, 78 N.J.Super. 294, 304, 188 A.2d 427 (App. Div.1963); see also In re Commitment of R.S., 339 N.J.Super. 507, 773 A.2d 72 *951 (App.Div.2001). We find no abuse of discretion in the admission of the testimony.
An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(2). Defendant does not dispute that the incident was a "startling event," but he argues that there was an insufficient showing that Sponsel's comments were within "reasonable proximity of the alleged altercation."
An essential inquiry as to the admissibility of a statement as an excited utterance is whether the declarant had the opportunity to deliberate, reflect or misrepresent before making the statement or whether it was made spontaneously and in a state of excitement so as to negate fabrication. See State v. Williams, 106 N.J.Super. 170, 172, 254 A.2d 538 (App.Div.), certif. denied, 55 N.J. 78, 259 A.2d 228 (1969), cert. denied, 397 U.S. 1057, 90 S.Ct. 1405, 25 L.Ed.2d 675 (1970); Truchan v. Sayreville Bar and Restaurant, Inc., 323 N.J.Super. 40, 48-49, 731 A.2d 1218 (App. Div.1999).
The hearsay statement need not be contemporaneous with the startling event. Truchan, supra, 323 N.J.Super. 40, 731 A.2d 1218 (delay of fifteen minutes between the event and the statement not necessarily too long a time as to bar admission of statement); see also Williams, supra, 106 N.J.Super. at 173, 254 A.2d 538 (twenty minutes); Lazarchick, supra, 314 N.J.Super. at 524, 715 A.2d 365 (one hour); State v. Bass, 221 N.J.Super. 466, 482-83, 535 A.2d 1 (App.Div.1987), certif. denied, 110 N.J. 186, 540 A.2d 182 (1988) (six hours); cf. State v. Walker, 199 N.J.Super. 354, 360-61, 489 A.2d 728 (Law Div. 1985) (holding that statements made by an alleged assault victim in the hospital six weeks after the incident were not admissible since it could not be determined that she was "reliving the incident"). Moreover, the inability to determine the exact elapsed time does not preclude admissibility as long as there is a showing that the interval was brief and the excited state of the declarant continued. State v. Williams, 214 N.J.Super. 12, 19-20, 518 A.2d 234 (App.Div.1986). Here the police arrived within a minute or two of the 9-1-1 call and saw Sponsel in a state close to "hysterical." He remained agitated throughout his description of events to Officer Flickinger. We find that the circumstances were sufficient for admissibility of Sponsel's statements as excited utterances under N.J.R.E. 803(c)(2).
However, we are constrained to reverse the conviction and order a new trial due to the actions of the prosecutor and the failure of the trial judge to take proper remedial action to insure a fair trial. For over two years the fact that Sponsel witnessed this incident was known by the Brigantine Police Department. That the information was also kept from the trial prosecutor did not adulterate its significance or the defendant's right to discover this information. As we previously stated, "[d]ue process in its constitutional sense is little more than a metonym for fair play." State v. Laganella, 144 N.J.Super. 268, 284, 365 A.2d 224 (App.Div.), appeal dismissed, 74 N.J. 256, 377 A.2d 652 (1976). Whether intentional or negligent, the failure to disclose this eyewitness deprived the defense of the opportunity to investigate and evaluate his testimony either to support the defense case or reveal conflicts with inconsistencies in the testimony of other State witnesses.
The State concedes on appeal that the trial prosecutor improperly refused to discharge the State's obligation to provide the defense with Sponsel's address as required *952 by R. 3:13-3(c)(6) and R. 3:13-3(g). The argument is that the defense "relinquished its right to complain" because no demand was made for Sponsel's address until after the State rested. However, the record is clear that defense counsel made timely objections to Officer Flickinger's testimony both on evidential and discovery grounds. It is also apparent that up to the moment the State rested defense counsel was led to believe that the prosecutor would call Sponsel as a witness and the defense would be given the opportunity to interview him before he testified.
True, no guarantees were given by the State that Sponsel was to be produced, and the State is not required to assist in preparation of the defense. However, the prosecutor cannot mislead as to production of a witness and then refuse to disclose the witness's location or disingenuously claim ignorance. A criminal trial is not a jousting match or board game in which strategy outweighs fairness and rules are celebrated in the letter and not the spirit. Prosecutors are not simply trial lawyers representing the State. State v. Torres, 328 N.J.Super. 77, 94, 744 A.2d 699 (App.Div. 2000). They are constitutional officers representing the people of this State with the responsibility not only to ferret out, pursue and prosecute the guilty but also to promote fairness and protect the basic rights of all citizens, even those they believe to be guilty. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935); State v. Loftin, 146 N.J. 295, 386, 680 A.2d 677 (1996); State v. Ramseur, 106 N.J. 123, 320, 524 A.2d 188 (1987); State v. Farrell, 61 N.J. 99, 105, 293 A.2d 176 (1972); State v. Gomez, 341 N.J.Super. 560, 571, 775 A.2d 645 (App.Div.2001); State v. Sosinski, 331 N.J.Super. 11, 21, 750 A.2d 779 (App.Div. 2000). An overzealous prosecutor damages justice. A prosecutor acting to promote fairness is proud proof of justice.
Compounding the improper actions of the prosecutor was the failure of the trial judge to take ameliorative action to alleviate prejudice to the defendant. R. 3:13-3(g) contemplates that the trial judge take appropriate action when there has been a failure of compliance by the State with its continuing duty to disclose relevant information.
If at any time during the course of the proceeding, it is brought to the attention of the court that a party has failed to comply with this rule ... it may order such party to permit the discovery ..., grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or may enter such other orders as it deems appropriate.
The trial judge properly denied the defense motion to dismiss the indictment since this drastic remedy is inappropriate where other judicial action will protect a defendant's fair trial rights.
Before a dismissal of an indictment is warranted in such circumstances, we believe there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process or an egregious carelessness or prosecutorial excess tantamount to suppression. In the absence of these conditions the right of the public to its day in court in the prosecution of properly found indictments should be forfeited only if otherwise there would be manifest and harmful prejudice to defendant.
[Laganella, supra, 144 N.J.Super. at 282-83, 365 A.2d 224; State v. Sapienza, 202 N.J.Super. 282, 287, 494 A.2d 849 (App.Div.), certif. denied, 102 N.J. 312, 508 A.2d 195 (1985).]
A trial judge is not limited to dismissal as a remedy. The rule specifically provides for discretion in formulating a *953 sanction for a discovery violation. See State v. Marshall, 123 N.J. 1, 134, 586 A.2d 85 (1991), cert. denied, Marshall v. New Jersey, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993); State v. Toro, 229 N.J.Super. 215, 223, 551 A.2d 170 (App. Div.1988), certif. denied, 118 N.J. 216, 570 A.2d 973 (1989); State v. Utsch, 184 N.J.Super. 575, 580, 446 A.2d 1236 (App. Div.1982). An adjournment or continuance is a preferred remedy where circumstances permit. In State v. Bellamy, 329 N.J.Super. 371, 748 A.2d 106 (App.Div. 2000), the co-defendant entered a guilty plea the day before defendant's trial and indicated for the first time that the two men had been hired to transport drugs by a named third man. We held that the failure to grant defendant a short adjournment to investigate the existence or actions of the third man constituted an abuse of discretion. Moreover, we have also approved a short trial recess to enable the prosecution to explore evidence submitted by the defendant on the eve of trial. State v. Dimitrov, 325 N.J.Super. 506, 739 A.2d 1008 (App.Div.1999), certif. denied 163 N.J. 79, 747 A.2d 287 (2000); State v. Williams, 214 N.J.Super. 12, 518 A.2d 234 (App.Div.1986).
The State reiterates the determination of the trial judge that a short continuance was unwarranted because any testimony by Sponsel would be cumulative to Cutillo. This conclusion rests on the unverified and untested assumption that Sponsel's testimony would match the narrative given by Officer Flickinger. Since no written statement was taken and no notation is made of Sponsel in any police report, the assumption as to the content of the testimony by Sponsel is simply that an assumption which was improperly treated as a presumption based on Flickinger's testimony of statements made two years before the trial. Furthermore, it was not for the trial judge to appraise the persuasive effect of the hypothetical testimony by Sponsel. "A defendant's right to discovery does not necessarily turn on an appraisal of the beneficial value of the material sought to be discovered." Bellamy, supra, 329 N.J.Super. at 377, 748 A.2d 106.
The importance of Flickinger's hearsay account of Sponsel's statements is obvious. It narrates an eyewitness account of a potentially deadly assault and explains the genesis of the dispute. It could support the victim's statement that "it was an accident" or contradict Cutillo's testimony of events which was somewhat weakened by cross-examination. There can be little question that a deviation or a discrepancy in Sponsel's recollection would weaken the State's case.
Defendant had a right to the name and address of this significant witness under R. 3:13-3(c) and (g) as well as the constitutional right of compulsory process to subpoena the witness and a reasonable time to effectuate service of process upon him to secure his presence. Id. at 378, 748 A.2d 106; State v. Rodriguez, 254 N.J.Super. 339, 345, 603 A.2d 536 (App.Div.1992). The denial of a continuance coupled with the discovery violation by the prosecutor deprived defendant of a fair trial. We reverse and remand for a new trial. Therefore, we find it unnecessary to consider the other arguments put forth by defendant.
Reversed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] During the course of oral argument the prosecutor stated that she was unaware of Sponsel's address. However, it is clear that the address was known to the prosecutor's office and Brigantine Police Department since Sponsel was subpoenaed by the State. Moreover, the testimony of Detective Chiarolanza confirms that Sponsel was in the area and could be located.