**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0252-17T3

KATHLEEN VOTOR-JONES,

     Plaintiff-Appellant,

v.

EDWIN KELLY, MICHELE CAROSELLI,
WILLIAM JOST, and KELLY'S TAVERN,

     Defendants-Respondents.

_____

Argued August 14, 2018 — Decided August 24, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Docket No.
L-2079-12.

Thomas J. Manzo argued the cause for appellant
(Szaferman, Lakind, Blumstein & Blader, PC,
attorneys; Thomas J. Manzo, of counsel;
Brandon C. Simmons, on the brief).

Christopher J. Brennan argued the cause for
respondent Edwin Kelly (Greer Law Firm,
attorneys; Donald K. Greer, on the brief).

Terence M. King argued the cause for
respondent Kelly's Tavern.

PER CURIAM

Plaintiff Kathleen Votor-Jones appeals from the Law Division's grant of summary judgment to defendants, Edwin Kelly and Kelly's Tavern, dismissing with prejudice her complaint seeking damages arising out of injuries she suffered while co-defendant, Michelle Caroselli, piloted a personal watercraft[1] (PWC). We affirm.

## I.

We glean the following facts from the record and view them in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2.

On July 4, 2011, plaintiff was one of seven employees and patrons of Kelly's Tavern invited on a social trip organized by the tavern's owner and plaintiff's boyfriend, Edwin Kelly. Plaintiff described the event as a "bar outing," but, while Kelly's Tavern formerly held "large scale" "customer appreciation days," this event was small and planned the night prior at the suggestion of the boat's operator, Fred Pierce.

The plan was for each attendee to bring their own food and alcohol. At some point on the morning of July 4, plaintiff and Kelly went to Kelly's Tavern to fill a cooler. Kelly estimated

---

[1] See N.J.S.A. 12:7-62 (defining personal watercraft).

the cooler had twenty-four beers and a bottle of wine. In total, the group had four or five coolers on the boat.

Everyone met at the dock near Kelly's house in Neptune around 11 a.m., but due to a problem with the boat, the trip was delayed for about an hour. While there was a tacit agreement among the parties that no one would drink until 4:00 p.m., Michelle Caroselli acknowledged she was drinking prior to boarding the boat, and plaintiff testified she "saw [Caroselli] drink at least three beers on the dock."

The boat left the dock around noon and Pierce piloted the boat for about an hour before he stopped near Asbury Park and let it drift. The boat was accompanied by a PWC owned by Kelly and operated by Lou Dahlman. Plaintiff said that during the trip to the drifting point, Caroselli had a beer in her hand and described her as "loud," "boisterous," and "excited," but conceded she did not know if she was intoxicated. Plaintiff did not hear Caroselli slur her words, but stated she was wobbling on the boat, as was everyone else.

Twenty minutes after stopping, Dahlman asked Caroselli if she wanted to drive the PWC. She agreed, so Dahlman slid back to allow her to board the PWC. Caroselli testified she received instructions from Dahlman, who remained on the PWC, but could not recall discussing anything with Kelly. Kelly testified Caroselli

asked for permission to use the PWC, which he granted after assuring she had a license.

Once on the PWC, Caroselli drove away from the boat at full speed and when she and Dahlman were "pretty far off," plaintiff and Kelly jumped in the water to swim. Thereafter, Caroselli turned around and approached the boat at approximately 40 miles per hour when she struck plaintiff and Kelly. Plaintiff and Kelly were assisted back onto the boat and rushed to the nearest dock. There, Caroselli spoke to the police, but no arrests were made nor summonses issued.

Plaintiff filed suit claiming, William Jost, the boat's owner, Caroselli, Kelly's Tavern and Kelly, individually, negligently caused her personal injuries and resulting damages. Plaintiff's claim against Jost was dismissed by stipulation of the parties. Following discovery, Kelly's Tavern and Kelly moved for summary judgment, which the motion judge granted. The judge rejected plaintiff's claim that Kelly's Tavern was negligent in serving alcohol to a visibly intoxicated person in violation of the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1 to -7 (Dram Shop Act). The judge also rejected plaintiff's social host liability and negligent entrustment theories against Kelly, individually.

4

Plaintiff appeals and renews the same arguments before us. During the pendency of this appeal, plaintiff dismissed her claims against Caroselli by stipulation of the parties.

## II.

We review a trial court's grant of summary judgment de novo, employing the same standard used by the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Under that standard, the trial court shall grant summary judgment if the evidence "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill, 142 N.J. at 528-29.

## A.

We first address plaintiff's statutory causes of action.

To prevail on a Dram Shop Act claim, a party must present evidence that an establishment served alcohol to a visibly intoxicated individual. N.J.S.A. 2A:22A-5; see also Halvorsen v. Villamil, 429 N.J. Super. 568, 575 (App. Div. 2013). The Dram Shop Act was "designed to protect the rights of persons who suffer loss as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server." N.J.S.A. 2A:22A-2. A "'Licensed alcoholic beverage server' or 'server' means a person . . . who has been issued a permit to sell alcoholic beverages by

the Division of Alcoholic Beverage Control in the Department of Law and Public Safety." N.J.S.A. 2A:22A-3. Service need not be direct, as "a commercial server who provides alcohol to a customer by a means other than direct service may nonetheless be liable . . . notwithstanding the use of the term 'serve' in the statute." Dower v. Gamba, 276 N.J. Super. 319, 326 (App. Div. 1994).

We reject as too attenuated plaintiff's contention that the circumstances here fall within the scope of the Dram Shop Act, because neither Kelly's Tavern nor Kelly individually were acting as a "Licensed alcoholic beverage server" or "server" contemplated by the statute. N.J.S.A. 2A:22A-3. Similarly, Caroselli was not a "customer" of Kelly's Tavern or Kelly. Plaintiff's attempt to color this event as a "bar outing" is not supported by the facts. While there was testimony indicating Kelly's Tavern used to have "customer appreciation days," those events ceased fifteen years ago and were "large scale" with about "a hundred people" that "had passes." By contrast, this occasion was informal, small-scale and required attendees to bring their own food and alcohol.

Nonetheless, we address the merits of plaintiff's argument that "[t]here is a factual dispute as to whether Caroselli was visibly intoxicated." In support this claim, plaintiff relies on

her observations of Caroselli drinking several beers and acting excited and boisterous.

The Dram Shop Act defines "visibly intoxicated" as "a state of intoxication accompanied by a perceptible act or series of acts which present clear signs of intoxication." N.J.S.A. 2A:22A-3. Examples of a "visibly intoxicated" include persons exhibiting "a blank sta[re] look," being "animated, loud," having "a very slight sway," "slurring . . . words, using rapid hand movements while talking," and an appearance that the "eyes were drunk . . . [l]ike floating eyeballs." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 178 (App. Div. 2006); see also Truchan v. Sayreville Bar & Rest., Inc., 323 N.J. Super. 40, 45 (App. Div. 1999) (finding evidence of visible intoxication where an individual was loud, boisterous, and repeating himself in a conversation).

While lay opinion may be used to establish a person was intoxicated and expert opinion is not necessary, see State v. McLean, 205 N.J. 438, 457 (2011), neither is present in this case. Neither plaintiff, nor anyone else, heard Caroselli slur her words and plaintiff conceded she could not discern if Caroselli was intoxicated. Moreover, the evidence of "visible intoxication" in this case pales when compared to evidence presented in Verni, 387 N.J. Super. at 180, where police officers stated, "[o]n a scale

of one-to-ten," the individual's "level of intoxication [w]as a ten," and a test found his "blood-alcohol concentration (BAC) [was] .266 percent," and Truchan 323 N.J. Super. at 45-46, where the individual was "falling," "unable to stand," speech "'slobbering,' slurred and slow," and "tests revealed his [BAC] to be .201 [percent]." Thus, the judge properly ruled plaintiff failed to establish visible intoxication sufficient to prevail on a Dram Shop Act claim.

For the same reason, we reject plaintiff's social host liability theory pursuant to N.J.S.A. 2A:15-5.5 to -5.8. Similar to her Dram Shop Act claim, plaintiff submits "there are factual issues as to who provided the alcohol" and "whether Caroselli was visibly intoxicated." Under N.J.S.A. 2A:15-5.6, an injured party:

> [M]ay recover damages from a social host only if:
>
> (1) The social host willfully and knowingly provided alcoholic beverages either:
>
> (a) To a person who was visibly intoxicated in the social host's presence; or
>
> (b) To a person who was visibly intoxicated under circumstances manifesting reckless disregard of the consequences as affecting the life or property of another; and
>
> (2) The social host provided alcoholic beverages to the visibly intoxicated person under circumstances which created an

8

unreasonable risk of foreseeable harm to the life or property of another, and the social host failed to exercise reasonable care and diligence to avoid the foreseeable risk; and

(3) The injury arose out of an accident caused by the negligent operation of a vehicle by the <u>visibly intoxicated</u> person who was provided alcoholic beverages by a social host.

[N.J.S.A. 2A:15-5.6 (emphasis added).]

Plaintiff at best offered evidence Caroselli had been drinking, but submitted insufficient evidence to support a claim of visible intoxication. Thus, we affirm the grant of summary judgment related to plaintiff's social host liability claim.

B.

Plaintiff also advances a theory of liability against Kelly under the principle of negligent entrustment. Under this theory, plaintiff alleges "[a] jury could find . . . Kelly was negligent for entrusting the [PWC] to someone who had been drinking" or "for failing to realize[] that Caroselli had been drinking." Plaintiff further submits, "Kelly had a duty . . . to inquire as to Caroselli's knowledge, fitness and experience" before permitting her to use the PWC.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." <u>Townsend</u>

9

v. Pierre, 221 N.J. 36, 51 (2015) (citation omitted).  More

specifically, negligent entrustment is defined as:

> [P]ermit[ting] a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.
>
> [Restatement (Second) of Torts § 308 (Am. Law Inst. 1965); see also Lombardo v. Hoag, 269 N.J. Super. 36 (App. Div. 1993).]

In an action based on the theory of negligent entrustment,

the plaintiff must prove:

> (1) the entrustee was incompetent, unfit, inexperienced, or reckless;
>
> (2) the entrustor knew (in some jurisdictions "actually" knew), should have known, or had reason to know of the entrustee's condition or proclivities;
>
> (3) there was an entrustment of the dangerous instrumentality;
>
> (4) the entrustment created an appreciable risk of harm to others; and
>
> (5) the harm to the injury victim was "proximately" or "legally" caused by the negligence of the entrustor and the entrustee.
>
> [57A Am. Jur. 2d Negligence § 318 (2005).]

Here, plaintiff cannot establish the first two elements.  The

evidence fails to demonstrate the first element because Caroselli

possessed a certificate demonstrating completion of a boat safety

course,[2] which she presented at her deposition, and she testified to previous experience using PWCs.

Furthermore, there was insufficient evidence to establish Kelly knew or should have known of Caroselli's level of intoxication or experience with PWCs. Kelly's uncontroverted testimony indicates that before he allowed Caroselli to use the PWC he asked if she had a certificate; was told that she had driven her previous boyfriend's PWCs; and conditioned his permission on Dahlman, a certified boat captain, accompanying her. Caroselli's testimony merely states she did not recall this conversation with Kelly and fails to illuminate the state of Kelly's knowledge at the time he entrusted her with the PWC. Moreover, the mere fact that Caroselli was drinking is not enough to establish she was intoxicated. See Gustavson v. Gaynor, 206 N.J. Super. 540, 545 (App. Div. 1985) (noting the fact an individual has consumed alcohol is by itself insufficient to warrant an inference that the individual was intoxicated and that the intoxication therefore rendered the individual negligent).

_____

[2] We note that for this reason plaintiff cannot premise negligence based on violation of N.J.S.A. 12:7-61(f), which makes it a finable offense for a person who "owns or has control or custody of a [PWC]" to permit it to be operated by a person who does not "possess a certificate certifying successful completion of a boat safety course."

Simply put, our court rules favor the expeditious resolution of matters through the summary judgment process where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 65 (1980).  Such is the case here.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0252-17T3