**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2331-17T1

ELAZORA KEITH WRIGHT,

    Plaintiff-Appellant,

v.

HARRAH'S ATLANTIC CITY
OPERATING COMPANY, LLC,
d/b/a HARRAH'S RESORT
ATLANTIC CITY,

    Defendant-Respondent.

_____

Argued telephonically February 14, 2019 –
Decided March 29, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law
Division, Atlantic County, Docket No. L-2163-15.

Evan J. Rosenberg argued the cause for appellant
(Eichen Crutchlow Zaslow, LLP, attorneys; William O.
Crutchlow, of counsel and on the briefs; Ashley Smith,
on the briefs).

Amy E. Rudley argued the cause for respondent (Cooper Levenson, PA, attorneys; Russell L. Lichenstein, of counsel; Amy E. Rudley, of counsel and on the brief; Jennifer B. Swift, on the brief).

PER CURIAM

Plaintiff Elazora Keith Wright appeals from an order entered by the Law Division dated November 3, 2017, which granted summary judgment in favor of defendant, Harrah's Atlantic City Operating Company, LLC, which does business as Harrah's Resort Atlantic City (Harrah's). Plaintiff also appeals from an order dated December 15, 2017, which denied his motion for reconsideration of the November 3, 2017 order. We affirm in part, reverse in part, and remand for further proceedings.

I.

On October 11, 2013, plaintiff and his girlfriend Deveta Eatmon traveled by bus from Maryland to Atlantic City. They arrived at Harrah's at 3:00 p.m. or 3:30 p.m. They checked into the hotel, placed their luggage in their room, and around 3:45 p.m., went to the Diamond Club, which is located adjacent to the casino floor. Harrah's provides patrons of the Diamond Club drinks, free of charge, and a self-serve buffet.

Plaintiff testified that at the Diamond Club, he initially drank four shots of Hennessy cognac and three beers. He then drank six or seven shots of tequila,

and followed each shot with another beer. He stated that after his first shot of tequila and fourth beer, he "was feeling good" and believed he was showing visible signs of intoxication.

Plaintiff and Eatmon spent several hours in the Diamond Club. They then went to the casino, and plaintiff began to use one of the slot machines. At Harrah's, a patron can order a drink using the slot machine, and a server will deliver the drink to the patron. The slot machine recorded that plaintiff placed orders for shots of cognac at 5:52 p.m. and 5:59 p.m. There is evidence that plaintiff also drank two beers while he was at the slot machine.

A surveillance video shows that at 7:11 p.m., plaintiff struck the slot machine and broke its screen. Harrah's contends plaintiff punched the machine; but plaintiff asserts he damaged the machine when he lost his balance and fell. Plaintiff and Eatmon then left the casino floor and walked to a nearby area, where plaintiff sat down at a table and removed his jacket. At around 7:17 p.m., Harrah's security personnel approached plaintiff and five minutes later, they escorted plaintiff to the security office.

At the security office, personnel spoke with plaintiff. They then went with him to his room so that he could collect his personal belongings. At 8:17 p.m., security personnel ejected plaintiff from the premises. Thereafter, Eatmon

3

called plaintiff and told him to return to the hotel, go to their room, and sleep. A surveillance video shows plaintiff walking through the building at 8:35 p.m. After Eatmon handed something to plaintiff, plaintiff is seen entering an elevator with his personal belongings. He went to the room. A surveillance video shows that later, plaintiff came down in the elevator without his belongings. Plaintiff is seen entering the casino, and at 8:44 p.m., Harrah's security personnel stopped him and again ejected him from the premises.

Plaintiff testified that after he was ejected the second time, he got into a taxi, which drove away. He did not know where he went in the taxi. At some point, plaintiff exited the taxi and began to cross a road known as the "Brigantine Connector," which connects Atlantic City to Brigantine. At around 9:33 p.m., plaintiff was struck by a vehicle while he was attempting to cross the Brigantine Connector.

Plaintiff was taken by ambulance to a hospital. He had sustained serious injuries. Plaintiff's blood was drawn at around 10:14 p.m. According to Dr. John Brick, plaintiff's expert in the pharmacological, physiological, and behavioral effects of alcohol and drugs, plaintiff's blood alcohol level at that time was approximately 0.143%. Plaintiff remained in the hospital until November 18, 2013.

On September 24, 2015, plaintiff filed a one-count complaint against Harrah's, asserting a claim under the New Jersey Licensed Alcoholic Beverage Server Fair Liability Act (the Dram Shop Act or the Act), N.J.S.A. 2A:22A-1 to -7.[1]  Plaintiff also claimed Harrah's and its agents "negligently managed . . . [p]laintiff after they caused him to become intoxicated and continued to serve him alcohol [when] he was visibly intoxicated including, but not limited to, by refusing to permit him to return to his hotel room" and "forcibly" ejecting him from the premises.  After the completion of discovery, Harrah's filed a motion for summary judgment, which plaintiff opposed.

The Law Division judge heard oral argument on the motion and thereafter placed her decision on the record.  The judge found there was no genuine issue of material fact and Harrah's was entitled to summary judgment.  The judge decided the evidence did not support a finding that Harrah's served plaintiff alcohol while he was visibly intoxicated.  The judge also decided there was insufficient evidence to show Harrah's alleged negligent service of alcoholic beverages was a proximate cause of plaintiff's injuries or that such injuries were

---

[1]  A "dram shop" is an establishment where alcoholic beverages are served for consumption on the premises. Mazzacano v. Estate of Kinnerman, 197 N.J. 307, 318 n.7 (2009) (citation omitted).

foreseeable. The judge therefore concluded that plaintiff had not presented sufficient evidence to support his claim under the Dram Shop Act.

The judge also decided that plaintiff's claim of negligent management failed as a matter of law because the Act provides the exclusive remedy for claims arising from the negligent service of alcoholic beverages. The judge entered an order dated November 3, 2017, granting defendant's motion for summary judgment.

Thereafter, plaintiff filed a motion for reconsideration. On December 15, 2017, the judge heard oral argument and placed an oral decision on the record. The judge decided that plaintiff had not provided a basis for reconsidering her decision that plaintiff had not presented sufficient evidence to support a claim under the Dram Shop Act.

The judge also stated that she remained convinced that the exclusivity provision of the Act barred plaintiff's claim for negligent management. The judge decided, however, that assuming the claim was not barred, defendant did not owe plaintiff a duty to exercise reasonable care and did not breach any such duty. The judge entered an order dated December 15, 2017, denying plaintiff's motion for reconsideration. This appeal followed.

6

II.

On appeal, plaintiff argues the trial court erred by granting Harrah's motion for summary judgment on his dram shop claim. Plaintiff contends he presented sufficient evidence to raise a genuine issue of material fact as to whether Harrah's agents or employees served him alcoholic beverages while he was visibility intoxicated. He also contends he presented sufficient evidence to raise a genuine issue of material fact as to whether Harrah's alleged negligent service of alcohol was a proximate cause of his injuries and whether such harm was foreseeable.

When reviewing an order granting summary judgment, we apply the same standard that the trial court applies when ruling on a summary judgment motion. Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)). The court rules provide that summary judgment shall be granted when the record before the court on the motion "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The court rules further provide that "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the

parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. "If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

The Dram Shop Act provides "the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server." N.J.S.A. 2A:22A-4. The Act states in pertinent part that:

> a. A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages from a licensed alcoholic beverage server only if:
>
> (1)  The server is deemed negligent pursuant to subsection b. of this section; and
>
> (2)  The injury or damage was proximately caused by the negligent service of alcoholic beverages; and
>
> (3)  The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.

A-2331-17T1

> b. A licensed alcoholic beverage server shall be deemed to have been negligent only when the server served a visibly intoxicated person, or served a minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor.
>
> [N.J.S.A. 2A:22A-5.]

The Act defines visible intoxication as "a state of intoxication accompanied by a perceptible act or series of acts which present clear signs of intoxication." N.J.S.A. 2A:22A-3.

A plaintiff asserting a claim under the Act need not present eyewitness testimony that he or she was served alcohol while visibly intoxicated. See Halvorsen v. Villamil, 429 N.J. Super. 568, 575 (App. Div. 2013). Therefore, "[t]o defeat a motion for summary judgment in a dram shop case, a plaintiff must present sufficient direct or circumstantial evidence that would permit a jury to reasonably and legitimately deduce that a beverage server served alcoholic beverages to the person at issue while he or she was visibly intoxicated." Ibid. (citing Salemke v. Sarvetnick, 352 N.J. Super. 319, 327 (App. Div. 2002)); see also Mazzacano, 197 N.J. at 321 (noting that an expert's testimony can be sufficient to demonstrate visible intoxication).

In her decision on Harrah's motion for summary judgment, the judge stated that the record shows that Harrah's served plaintiff his last alcoholic

beverage at 5:59 p.m.  The judge noted that after plaintiff struck the slot machine at 7:11 p.m., he is seen on a surveillance video speaking with the security personnel.  According to the judge, plaintiff was not staggering, and he was not unsteady on his feet.

The judge also noted that after the incident at the slot machine, a surveillance video shows plaintiff in the area near the casino sitting at a table and talking with the security personnel.  The judge stated that plaintiff "did not appear . . . to be swaying or anything like that."  Based on these observations, the judge concluded that plaintiff could not establish his claim under the Dram Shop Act.

We are convinced, however, that the judge erred by basing her decision primarily on her personal observations of plaintiff on the surveillance videos.  The videos are capable of different interpretations.  Indeed, plaintiff's experts viewed the videos and said plaintiff showed signs of visible intoxication.  The judge also failed to consider other evidence that plaintiff presented in support of his dram shop claim, which supported his claim that he was served alcohol while visibly intoxicated.

As we stated previously, plaintiff testified that he and Eatmon spent several hours at the Diamond Club.  While there, plaintiff drank four shots of

Hennessy cognac, followed by three Heineken beers. He then drank six or seven shots of tequila, and followed each shot of tequila with an additional beer. Plaintiff then left the Diamond Club and went to the casino, where he ordered two additional shots of cognac while at the slot machine. There also is evidence that thereafter, plaintiff drank two more beers.

Plaintiff testified that after he consumed his first shot of tequila and his fourth beer, he believed he was visibly intoxicated. Eatmon also testified that plaintiff was stumbling around, his eyes were red, and he was stuttering and slurring his speech. Plaintiff and Eatmon's statements support plaintiff's claim that Harrah's employees served him alcoholic beverages while he was visibly intoxicated.

Dr. Brick's report and testimony also provided support for plaintiff's claim. In his report, Dr. Brick observed that alcohol generally acts as a depressant to the central nervous system, and "[a]s blood alcohol levels rise, the signs of intoxication increase in number and intensity." He noted that for the majority of persons who consume alcohol, it would be difficult, without specific testing, "to reliably detect overt signs of alcohol intoxication . . . until blood alcohol levels reach[]" 0.15%. Such signs would include decreased inhibitions, impaired psychomotor performance, and diminished cognitive skills.

A-2331-17T1

Dr. Brick stated that in his opinion, Harrah's employees served plaintiff alcoholic beverages while he was "in a state of visible intoxication" and this placed plaintiff and others at an increased risk for injury. As support for his opinion, Dr. Brick cited plaintiff's behavior, as shown on Harrah's surveillance videos, plaintiff's and Eatmon's testimony about plaintiff's consumption of alcohol, and the doctor's estimates of plaintiff's probable blood alcohol levels at the relevant times.

Dr. Brick based those estimates on the assumption that plaintiff began to drink alcoholic beverages at 3:45 p.m. and had a blood alcohol level of 0.143% at 10:14 p.m. Dr. Brick opined that plaintiff would have been in the range of visible intoxication between 5:50 p.m. and 6:55 p.m., if he finished drinking at 6:15 p.m., and in the range of visible intoxication between 6:35 p.m. and 7:50 p.m., if he finished drinking at 7:00 p.m. At his deposition, Dr. Brick noted that plaintiff is seen on the surveillance video drinking beer at 6:15 p.m. or 7:00 p.m. He opined that in all probability, Harrah's employees served plaintiff when he was in a state of visible intoxication.

The expert report submitted by James M. Dallas, plaintiff's security expert, provided further support for plaintiff's dram shop claim. Dallas reviewed the surveillance videos and other discovery materials. In his report, Dallas

stated that recognized indications of intoxication include "facial flushing, slurred speech, unsteady gait, euphoria, increased activity, volubility, disorderly conduct, slowed reactions, impaired judgment, and motor incoordination, insensibility, or stupefaction."

Dallas opined that plaintiff showed impaired judgment when he struck the slot machine at 7:11 p.m. He noted that when Harrah's security personnel questioned plaintiff after that incident, plaintiff appeared disheveled. Dallas also noted that the surveillance video shows that at 7:18 p.m., plaintiff had difficulty getting off a stool. He added that a surveillance video recorded while plaintiff was in the security office shows plaintiff engaging in actions that "indicate[d] a high level of impairment."

On appeal, Harrah's argues that Dr. Brick's analysis was insufficient to raise a genuine issue of material fact as to whether it served plaintiff alcohol when he was visibly intoxicated. Harrah's maintains Dr. Brick did not provide an opinion on plaintiff's blood alcohol level at the time he was served his last drink, which Harrah's asserts was at 5:59 p.m. According to Harrah's, Dr. Brick's analysis is "entirely meaningless." We disagree.

The record shows that Dr. Brick made several estimates of plaintiff's probable blood alcohol levels at 5:59 p.m., which was when plaintiff ordered his

last cognac at the slot machine. As shown on Dr. Brick's chart, the estimates of plaintiff's probable blood alcohol levels at 5:59 p.m. are approximately 0.075%, 0.090%, 0.105%, 0.115%, 0.135%, and 0.165%.

Dr. Brick explained that these estimates were based on the assumption that plaintiff stopped drinking at either 6:15 p.m. or 7:00 p.m., and upon different rates of absorption and elimination of the alcohol consumed. At his deposition, Dr. Brick testified that at 5:59 p.m., plaintiff's blood alcohol level was between 0.105% and 0.165%.

Based on that evidence, a reasonable jury could find that Harrah's employees served plaintiff an alcoholic beverage at 5:59 p.m. and at that time, plaintiff exhibited visible signs of intoxication. The motion judge erred by finding that there was no genuine issue of material fact as to whether Harrah's served plaintiff alcohol when he was visibly intoxicated.

### III.

Plaintiff further argues that the motion judge erred by finding that plaintiff did not present sufficient evidence to show that Harrah's alleged negligent service of alcohol was a proximate cause of plaintiff's injuries, and the reasonably foreseeable consequence of Harrah's alleged negligence.

In response to these arguments, Harrah's notes that the evidence shows that after plaintiff was ejected the second time, he left the premises by himself and there is "no evidence, direct or circumstantial, of where [plaintiff] went or what he did" after he left the premises. Harrah's points out that plaintiff claims he had no recollection of what occurred between the time he was ejected from the premises the second time and the time he was struck by a vehicle on the Brigantine Connector.

"The concepts of proximate cause and foreseeability are intertwined," Showalter v. Barilari, Inc., 312 N.J. Super. 494, 503 (App. Div. 1998), and are generally jury questions, Perez v. Wyeth Labs. Inc., 161 N.J. 1, 27 (1999) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 307-08 (1998) (Stein, J., concurring)). "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 577 (1999) (quoting Powers v. Standard Oil Co., 98 N.J.L. 730, 732 (Sup. Ct. 1923)).

"[T]o be a proximate cause . . . conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." Showalter, 312 N.J. Super. at 503 (alterations in original) (quoting Yun v. Ford Motor Co.,

276 N.J. Super. 142, 159 (App. Div. 1994) (Baime, J.A.D., concurring and dissenting), rev'd on dissent, 143 N.J. 162 (1996)). "The tortfeasor need not foresee the precise injury; it is enough that the type of injury be within an objective realm of foreseeability." Vega by Muniz v. Piedilato, 154 N.J. 496, 526 (1998) (quoting Yun, 276 N.J. Super. at 229-30).

Moreover, "[a] superseding or intervening act is one that breaks the 'chain of causation' linking a defendant's wrongful act and an injury or harm suffered by a plaintiff." Komlodi v. Picciano, 217 N.J. 387, 418 (2014) (quoting Cowan v. Doering, 111 N.J. 451, 465 (1988)). Superseding or intervening acts that "are 'foreseeable' or the 'normal incidents of the risk created' will not break the chain of causation and relieve a defendant of liability." Ibid. (quoting Rappaport v. Nichols, 31 N.J. 188, 203 (1959); Model Jury Charges (Civil), 6.14, "Proximate Cause—Where There is Claim of Intervening or Superseding Cause for Jury's Consideration" (approved Aug. 1999)).

A cause is superseding or intervening only when it constitutes the sole cause of the injury. Ibid. (first quoting Model Jury Charges (Civil), 6.14; then citing Davis v. Brooks, 280 N.J. Super. 406, 412 (App. Div. 1993)). In general, whether a cause is superseding or intervening is left for a determination by the

trier of fact. See Lynch v. Scheininger, 162 N.J. 209, 228 (2000) (quoting Rappaport, 31 N.J. at 203).

We are convinced that in this case, plaintiff presented sufficient evidence to raise a genuine issue of material fact on whether Harrah's alleged negligence was a proximate cause of his injuries, and whether such injuries were foreseeable. As stated previously, Dr. Brick opined that plaintiff's blood alcohol levels were in a range of 0.105% to 0.165% at around 5:59 p.m., when plaintiff ordered his last cognac at the slot machine.

Moreover, Dr. Brick's analysis indicates that plaintiff's blood alcohol level exceeded 0.15% at 8:44 p.m., when plaintiff was ejected from Harrah's, and at 9:33 p.m., when he was struck by a vehicle on the Brigantine Connector. Dr. Brick explained that at a blood alcohol level of 0.15%, a majority of drinkers show visible signs of intoxication.

Based on this evidence, a reasonable jury could find that Harrah's served plaintiff alcoholic beverages while he exhibited visible signs of intoxication, and it was reasonably foreseeable plaintiff could be injured by such service of alcohol. A reasonable jury also could find that Harrah's alleged negligent service of alcohol was a proximate cause of plaintiff's injuries because it was a substantial factor in bringing about the harm.

A-2331-17T1

Harrah's argues, however, that "the unaccountable length of time, and the unknowable circumstances under which [p]laintiff was walking, illegally, on the Brigantine Connector break the casual connection between the consumption of alcohol at Harrah's and the injury." We disagree. Based on the evidence presented, we cannot conclude as a matter of law that there was no causal connection between Harrah's alleged negligence and plaintiff's injuries.

We also cannot conclude as a matter of law that a superseding cause was the sole cause of plaintiff's injuries. In addition, a reasonable jury could find that plaintiff's actions in walking on the Brigantine Connector, and his failure to recall precisely what occurred after he left Harrah's were foreseeable consequences of his intoxication.

Harrah's further argues that the motion judge correctly determined that it was not foreseeable that a person who had been escorted from the premises to an area with public transportation "would then somehow wind up on the highway and be hit by a vehicle." Harrah's contends it was not reasonably foreseeable "that a patron would choose to illegally cross a highway." Again, we disagree. A jury could find it is reasonably foreseeable that a person who had been served alcoholic beverages while visibly intoxicated, and who is then ejected from the

18

premises in a state of intoxication, might "wind up on a highway and be struck by a vehicle" even though public transportation is available.

We therefore conclude the motion judge erred by granting summary judgment to defendant on the claim under the Dram Shop Act.

IV.

Plaintiff further argues that the trial court erred by granting summary judgment to Harrah's on his claim of negligent management. As stated in his complaint, plaintiff alleged that Harrah's employees "negligently managed [him] after they caused him to become intoxicated and continued to serve him alcohol [when] he was visibly intoxicated, including, . . . by refusing to permit him to return to his hotel room at . . . Harrah's . . . and forcibly causing him to be evicted from the premises."

On appeal, Harrah's argues that the motion judge correctly determined that plaintiff's claim for negligent management was barred by N.J.S.A. 2A:22A-4. The statute states that the Act provides the exclusive remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages. Ibid. The Act's exclusivity provision bars all other claims that "ar[ise] out of, and [are] related to, the negligent service of alcoholic beverages." Truchan v. Sayreville Bar & Rest., Inc., 323 N.J. Super. 40, 53 (App. Div. 1999).

Harrah's argues that plaintiff's negligent management claim arises out of and relates to the alleged negligent service of alcoholic beverages. Harrah's contends the claim is based on the allegation that Harrah's served plaintiff alcohol while he was visibly intoxicated and thereafter its security personnel should have prevented plaintiff from leaving the premises. Harrah's therefore contends the claim is barred by the Act's exclusivity provision. We agree.

The record shows that the claim arises out and it is related to Harrah's alleged negligent service of alcoholic beverages. Here, plaintiff alleges that Harrah's served him alcohol while he was visibly intoxicated. According to plaintiff, Harrah's negligent service of alcohol eventually led to the incident at the slot machine, which in turn resulted in plaintiff's ejection from the premises.

Plaintiff claims Harrah's security personnel were negligent in managing him because they failed to prevent him from leaving the premises. However, this allegation is based on the claim that plaintiff was visibly intoxicated when he was ejected. Moreover, plaintiff alleges that Harrah's security personnel could reasonably have foreseen that because plaintiff was intoxicated, he would be harmed if ejected from the premises in that condition.

On appeal, plaintiff argues that the claim is not barred by the Act because the alleged negligence of Harrah's security personnel was separate and apart

20

from the negligent service of alcohol. However, as alleged by plaintiff, Harrah's negligent service of alcohol set in motion a chain of events that eventually led to the injuries plaintiff sustained when he was struck by a vehicle on the Brigantine Connector. Therefore, the negligent-management claim arose out of the alleged service of alcohol to plaintiff while he was visible intoxicated. The claim is barred by N.J.S.A. 2A:22A-4.

Our decision in Truchan supports our conclusion. In that case, the plaintiff suffered serious personal injuries when a truck owned and operated by one of the defendants struck her vehicle head-on. Id. at 44-45. The evidence presented at trial established that on the night of the accident, the defendant driver had gone to a tavern where he was served alcoholic beverages while visibly intoxicated. Id. at 45-46. Due to several trial errors, we reversed the judgment for the tavern and remanded the matter for a new trial. Id. at 47-51.

We held, however, that the trial court did not err by dismissing the plaintiff's common law causes of action against the tavern for wrongful hiring of employees, wrongful supervision of employees, failure to identify patrons at risk of becoming intoxicated, and failure to maintain the premises as a safe environment after serving alcoholic beverages. Id. at 52-53. We found that these claims were barred by N.J.S.A. 2A:22A-4 because they "arose out of, and

21

were related to, the negligent service of alcoholic beverages." Id. at 53. Plaintiff's claim of negligent management is similar to the claims barred in Truchan. As in Truchan, the claims are barred by N.J.S.A. 2A:22A-4.

Our conclusion also is supported by Bauer v. Nesbitt, 198 N.J. 601 (2009). In that case, James Allan Hamby was killed while riding as a passenger in a car driven by the defendant Frederick Nesbitt, III. Id. at 603. Hamby and Nesbitt had socialized at the defendant C View Inn. Ibid. Nesbitt was underage and the Inn did not serve him any alcohol; however, he had been drinking before he arrived at the Inn. Ibid. Moreover, while at the Inn, "Hamby surreptitiously slipped rum into Nesbitt's soda." Ibid.

The plaintiff asserted wrongful death and survivorship claims against the Inn, claiming that it had a duty to monitor Nesbitt for signs of intoxication. Ibid. This court held that the trial court erred by granting summary judgment to the Inn. Bauer v. Nesbitt, 399 N.J. Super. 71, 85 (App. Div. 2008). We noted that there was evidence that the inn served Hamby alcohol while he was visibly intoxicated. Id. at 82. We also noted that the Inn made no effort to call a taxi or "ensure that Hamby was driven home by a sober companion." Id. at 83-84. The Supreme Court reversed our judgment because the plaintiff's complaint did

not include a claim against the Inn under the Dram Shop Act.  <u>Bauer</u>, 198 N.J. at 610.

The Supreme Court also held that the plaintiff's negligent-supervision claim was barred by the exclusivity provision of the Dram Shop Act.  <u>Id.</u> at 612-16.  The Court stated that in view of the language of the Act and the reasons it was enacted, the Legislature did not intend that a licensed alcoholic beverage server would be liable "for failing to monitor the conduct of a person to whom it did not serve alcohol, even if that person was intoxicated."  <u>Id.</u> at 613.  The Court added, "[t]o permit a negligent-supervision cause of action to proceed in this case would fly in the face of the liability limits that the Legislature put in place in the Dram Shop Act."  <u>Ibid.</u>

The reasons for applying the exclusivity bar in the Act in this case are even more compelling than in <u>Bauer</u>.  In <u>Bauer</u>, the Court applied the exclusivity provision of the Act to the negligent-supervision claim even though the Inn "never served [Nesbitt] any beverage other than a Coke."  <u>Id.</u> at 614.  In this case, plaintiff alleges Harrah's negligently served him alcohol while he was visibly intoxicated, and thereafter negligently failed to manage him.  That claim arises from and is related to the alleged negligent service of alcohol and is barred by N.J.S.A. 2A:22A-4.

On appeal, plaintiff also argues that the motion judge erred by finding that under the circumstances of this case, Harrah's did not owe plaintiff a duty to exercise reasonable care and did not breach any such duty. However, in view of our decision that plaintiff's "negligent management" claim is barred by N.J.S.A. 2A:22A-4, we need not address these issues.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION