**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4920-16T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

RASU LEE, a/k/a
RASHAN H. LEE, RASU H.
LEE, RESU H. LEE, LEE
RASU, and RASA LEE,

      Defendant-Appellant.

_____

Submitted March 26, 2019 – Decided April 26, 2019

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-06-0545.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rasu Lee was tried before a jury and found guilty of second-degree certain persons not to have weapons, in violation of N.J.S.A. 2C:39-7(b). Defendant appeals from the judgment of conviction (JOC) signed by the trial court on May 31, 2017. We affirm.

I.

We briefly summarize the relevant facts, drawn from the evidence presented at trial. On July 30, 2014, at approximately 3:30 a.m., officers Ralph Merced and Alba Fernandez of the City of Passaic Police Department (PPD) were on patrol in a marked police vehicle. The officers had been dispatched to the area of Passaic Avenue and 5th Street to respond to a disorderly-persons report. After dispersing the individuals, the officers were traveling north on 5th Street, when they observed a black Toyota Camry, which was parked on the opposite side of the street.

As the officers drove closer to the Toyota, it suddenly made a sharp U-turn, and almost struck the officers' patrol car. Merced testified that he had to apply his "brakes and wait for the car to clear the U[-]turn." The officers began to follow the Toyota and they notified the dispatcher so that he could "run the plate." Merced noticed that there were three persons in the Toyota: the driver

and two passengers, one in the front and one in the rear. According to Merced, the rear passenger repeatedly looked back at the officers' vehicle as they followed the Toyota.

At the intersection of Mercer Street and 4th Street, the driver made a left turn onto Mercer, but failed to come to a complete stop at the stop sign. The Toyota turned right onto 3rd Street and the officers followed. They activated the lights and sirens on the police vehicle, and the Toyota immediately pulled over to the curb.

Merced illuminated the interior of the Toyota with his spotlight. He observed the front passenger lean forward and make what he described as "furtive movements." It appeared to Mercer as if the front passenger was trying to conceal something beneath his seat. The other individuals were just sitting in the car waiting for the officers to approach.

The officers exited their patrol vehicle. Merced approached the Toyota on the driver's side, and Fernandez approached the car on the passenger side. Merced attempted to speak with the driver. As he was doing so, the front passenger, who was later identified as defendant, asked repeatedly why they were being stopped.

A-4920-16T3

Merced asked the driver to step out of the vehicle. She did so willingly. Merced and the driver walked to the rear of the Toyota. Defendant asked why the driver had to exit the car, since she had only run a stop sign. The driver was charged with careless driving and failing to stop at a stop sign.

Meanwhile, Fernandez remained by the passenger side of the Toyota, where she shined her flashlight into the car. Fernandez testified that she observed "defendant kicking a white plastic bag that was located near his feet, trying to get it out of [her] view." At around that time, officers Ronnie Villalobos, Francisco Urena, and Roberto Oquendo of the PPD arrived as backup.

Villalobos stood in front of the Toyota to watch the passengers inside, using his flashlight. He noted that defendant appeared nervous and fidgety, and he was moving his feet in a backwards direction. Villalobos also observed a white plastic bag behind defendant's heels. Villalobos testified that when Merced had the driver exit the car, defendant screamed, "shut the fuck up, shut up, you don't have to say anything."

After Merced spoke with the driver, he returned to speak with the rear passenger, who was later identified as the driver's daughter. She provided the officer with a false name. She was later arrested and charged with several

4

offenses. At that point, Villalobos heard defendant scream again: "shut the fuck up, you don't have to tell them anything, they don't have a – they don't have a warrant."

Merced obtained identifying information from defendant and checked with the dispatcher to determine if defendant had any active warrants. After dispatch informed Merced defendant had no such warrants, Merced told defendant he could leave. As defendant was exiting the Toyota, Merced was standing near the front passenger door with his flashlight. Near the front passenger seat, Merced observed a white bag with the barrel of a handgun extending from it. Merced called out, "gun, gun."

Villalobos ran to the passenger side of the Toyota and restrained defendant. Merced retrieved the weapon, removed the bullets, and placed defendant under arrest. The gun was a Glock 17 nine-millimeter handgun with thirteen rounds of ammunition in the magazine and one in the chamber.

A grand jury later charged defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count one); third-degree receiving stolen property, N.J.S.A. 2C:20-7 and -2(b)(2)(b) (count two); fourth-degree possession of a prohibited device, N.J.S.A. 2C:39-3(f) (count three); and

5

second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count four).

Defendant filed a motion to suppress the evidence obtained in the search of the vehicle. The judge conducted an evidentiary hearing on the motion. The judge determined that the officers had lawfully seized the weapon and denied the motion. The trial in the matter commenced on March 21, 2017. After the jury was selected, the State decided to proceed only on count four of the indictment, charging defendant with certain persons not to have weapons, in violation of N.J.S.A. 2C:39-7(b).

During the evidentiary portion of the trial, the State presented testimony from Merced, Fernandez, Villalobos, Detective David Ware of the Passaic County Prosecutor's Office, and Antonio Pereira, a ballistics expert from the Newark Police Department. After the State rested, defendant moved for a judgment of acquittal. The trial judge denied the motion.

The jury found defendant guilty of the certain persons offense. The judge thereafter granted the State's motion for imposition of a discretionary extended term as a persistent offender, pursuant to N.J.S.A. 2C:44-3(a). The judge sentenced defendant to a fourteen-year term of incarceration, with a seven-year period of parole ineligibility. This appeal followed.

A-4920-16T3

On appeal, defendant argues:

POINT I
LATE DISCLOSURE OF PERTINENT DISCOVERY INFORMATION DENIED [DEFENDANT] A FAIR TRIAL.

POINT II
THE WARRANTLESS STOP AND SEARCH OF THE MOTOR VEHICLE VIOLATED DEFENDANT'S RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE GUARANTEED BY THE NEW JERSEY AND THE UNITED STATES CONSTITUTIONS.

POINT III
COMMENTS BY THE PROSECUTOR ON FACTS NOT IN EVIDENCE DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT IV
THE CHARGE TO THE JURY ON CERTAIN PERSONS NOT TO HAVE WEAPONS WITHOUT SANITIZATION OF THE PREDICATE CONVICTION WAS ERROR.

POINT V
THE EXTENDED TERM SENTENCE IMPOSED BY THE COURT OF FOURTEEN (14) YEARS WITH SEVEN (7) YEARS OF PAROLE INELIGIBLITY WAS EXCESSIVE AND SHOULD BE REDUCED.

II.

Defendant first argues that he was denied a fair trial due to the State's late disclosure of certain information.  We disagree.

7

The record shows that jury selection began on March 21, 2017. On March 23, 2017, during a pretrial interview, Villalobos told the assistant prosecutor that during the motor vehicle stop on July 30, 2014, defendant screamed, "what the fuck," and told the driver that she did not have to let the police look in the car without a warrant. Villalobos also told the assistant prosecutor that defendant stated that he was not trying to move his feet to hide the white bag. The assistant prosecutor then disclosed this information to defense counsel, who asserted that the State had violated the discovery rules by failing to disclose these statements earlier.

On March 27, 2017, as jury selection was continuing, defense counsel sought to bar Villalobos from testifying about the statements. The judge denied the application and ruled that the State could present the evidence at trial. The judge stated that since jury selection was still continuing, the defense had sufficient time to address this new evidence.

Jury selection was completed on March 28, 2017. On that date, defense counsel advised the judge that the assistant prosecutor had disclosed additional information she obtained during a pretrial interview with Merced. The assistant prosecutor reported that when Merced approached the Toyota, defendant said, "come on, you know who I am." The next day, before the jury was sworn, the

8

assistant prosecutor also stated that Fernandez had informed her that she saw defendant get into the Toyota carrying a white bag. The State did not, however, present this evidence at trial.

On appeal, defendant argues that the State violated the discovery rules, and the trial judge erred by failing to take appropriate action to address the violation. Defendant asserts that he was prejudiced by the State's failure to disclose the statements he allegedly made to Villalobos during the motor vehicle stop in a timely manner. He also contends that in her summation, the assistant prosecutor relied heavily on the statements Villalobos attributed to defendant. He claims he did not have sufficient time to prepare his defense. He argues that because of the late discovery, he rejected the State's plea offer.

The court rules require the State to make discovery available to defense counsel "upon the return or unsealing of the indictment." R. 3:13-3(b)(1). "Discovery . . . includes exculpatory information or material," R. 3:13-3(b)(1)(A), and includes "any admissions or declarations against penal interest made by the defendant that are known to the prosecution but not recorded." R. 3:13-3(b)(1)(B).

Moreover, the State has "a continuing duty to provide discovery pursuant to this rule." R. 3:13-3(f). Therefore,

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule . . . it may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.
>
> [Ibid.]

"A court's failure to take appropriate action to remedy a discovery violation can implicate the defendant's right to a fair trial." State v. Smith, 224 N.J. 36, 48 (2016) (citing State v. Clark, 347 N.J. Super. 497, 507, 510 (App. Div. 2002)). That right includes "a meaningful opportunity to present a complete defense." Ibid. (quoting State v. Garron, 177 N.J. 147, 168 (2003)).

Here, the record shows that the assistant prosecutor disclosed the information learned from Villalobos shortly after she learned of this information during her pretrial interview with him, which was six days before the trial testimony began on March 29, 2017. Defendant has not established that the statements attributed to him were unduly prejudicial. He also has not shown that the State's failure to disclose this evidence earlier deprived him of the ability to present a complete defense, or affected his ability to evaluate the State's plea offer.

10

We note that Merced had testified at the pretrial suppression hearing about the motor vehicle stop and the discovery of the weapon in the car. Therefore, defendant was well aware of the substance of the evidence the State intended to present at trial, which included the movements of the passengers in the car, defendant's disruptive conduct, and the recovery of the loaded gun under defendant's seat. The statements that Villalobos attributed to defendant were not essential to the State's proofs.

We therefore reject defendant's contention that because the State delayed in producing the statements in discovery, he was denied a fair trial or a fair opportunity to evaluate the State's plea offer.

III.

Defendant next argues that the trial judge erred by denying his motion to suppress the evidence seized in the Toyota. We disagree.

Where, as in this case, the trial court denies a defendant's motion to suppress, we defer to the court's findings of fact "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses

A-4920-16T3

and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (first alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

"An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of a trial court are, however, reviewed de novo. Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution protect persons from unreasonable searches and seizures. Warrantless searches are presumed invalid, but the State may overcome that presumption by showing that the search fell within one of the recognized exceptions to the warrant requirement. See State v. Hill, 115 N.J. 169, 173-74 (1989) (citing State v. Patino, 83 N.J. 1, 7 (1980)).

On appeal, defendant argues that the officers did not have a reasonable, articulable suspicion to undertake an investigative stop of the vehicle. However, in this case, the officers did not make an investigatory stop. The officers stopped the vehicle because they observed the driver of the Toyota violate the laws governing the operation of motor vehicles in this State.

A-4920-16T3

We note that "[a] motor vehicle violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act." State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). Here, it is undisputed that the driver of the Toyota drove past the stop sign at 4th and Mercer Streets without coming to a complete stop. Therefore, the officers were justified in stopping the vehicle.

Defendant argues the police did not have probable cause to undertake a warrantless search of the automobile. The record shows, however, that the officers seized the weapon in the car pursuant to the plain view exception to the warrant requirement.

That exception allows the police to seize contraband in plain view without a warrant if three requirements are met: "(1) the officer must be lawfully in the viewing area when making the observation; (2) 'the discovery of the evidence . . . must be inadvertent,'" State v. Gonzales, 227 N.J. 77, 91 (2016) (alteration in original) (citation omitted) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 469 (1971) (plurality opinion)); and (3) the "police officer must have 'probable cause to associate the property with criminal activity.'" State v.

Bruzzese, 94 N.J. 210, 237 (1983) (quoting Texas v. Brown, 460 U.S. 730, 738 (1983)).[1]

Furthermore, an "observation into the interior of an automobile by a police officer located outside the automobile is not a 'search' within the meaning of the Fourth Amendment." State v. Reininger, 430 N.J. Super. 517, 534 (App. Div. 2013) (quoting State v. Foley, 218 N.J. Super. 210, 215 (App. Div. 1987)). When an officer seizes contraband in plain view from an automobile, "it [is] not necessary for the State to establish exigent circumstances under the automobile exception." Id. at 537 (citing State v. Pena-Flores, 198 N.J. 6, 32 (2009)).

In this case, the motion judge found that Merced was lawfully within the viewing area because the motor vehicle stop was lawful, that Merced's discovery of the gun was inadvertent, and that it was apparent the weapon was associated with criminal activity. There is sufficient credible evidence in the record to support the judge's determination that the plain view exception applied and the officers lawfully seized the weapon.

---

[1]  In Gonzales, the Court eliminated the inadvertence prong of the plain view exception. Gonzales, 227 N.J. at 99. However, the Court applied that new rule of law prospectively as of the date of the opinion—November 15, 2016. Id. at 77, 101. The search at issue in this case took place on July 30, 2014. Therefore, we analyze the officers' actions under the standard that applied before Gonzales was decided.

A-4920-16T3

IV.

Defendant argues that in summation, the assistant prosecutor made comments about facts that were not in evidence. He contends the prosecutor's remarks deprived him of a fair trial. Again, we disagree.

At summation, the assistant prosecutor discussed the second prong of the certain persons offense: whether the defendant purchased, owned, possessed, or controlled the firearm. The assistant prosecutor then made the following comments:

> For a minute, imagine you get – you get into a car. Okay? You know that you have a bag, and you put the bag underneath you. You don't want anybody else to know what the bag is, because you know what is in that bag is illegal. You're not allowed to have that bag.

After the assistant prosecutor completed her summation, defendant's attorney objected and argued that the assistant prosecutor's remarks assumed facts not in evidence, specifically, that defendant entered the Toyota with the gun. The assistant prosecutor argued that she had used a hypothetical to make her point, and this is permitted in a closing argument. The trial judge then instructed the jury:

> Okay. Members of the jury, let me just remind you this. That I told you a few times that, and I'll reiterate again, that anything either one of the lawyers says in summation is not evidence, you know.

A-4920-16T3

Number two, a lawyer's recollection, either side, recollection of the facts if it does not comport with your recollection it is your collective recollection that counts.

And, number three, the prosecutor indicated in her summation that imagine the – imagine you getting into a car with a white bag and contraband in it or – or a gun. I just want to remind you again that it's your recollection of any facts that were testified to that count.

So, . . . there is no testimony in this case that the defendant was seen getting into the car with a white bag. But if you heard that, that's your recollection. I don't recall that, but in any event it's your recollection that counts. Okay? All right.

On appeal, defendant argues that the prosecutor's comments deprived him of a fair trial because her hypothetical was based on Fernandez's observations of defendant getting into the Toyota, which the judge had excluded because of its late disclosure. Defendant claims that the prosecutor's comments were an improper attempt to bolster the State's case on the issue of possession of the weapon.

"[P]rosecutors are permitted considerable leeway to make forceful, vigorous arguments in summation." State v. Nelson, 173 N.J. 417, 472 (2002) (citing State v. Chew, 150 N.J. 30, 84 (1997)). When reviewing a prosecutor's comments, the court must assess the comments "in the context of the entire trial

record." Ibid. (citing State v. Morton, 155 N.J. 383, 419-20 (1998)). Even if the prosecutor's comments constitute misconduct, the misconduct will not be grounds for "reversal unless it [was] 'so egregious that it deprived the defendant of a fair trial.'" State v. Jackson, 211 N.J. 394, 409 (2012) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

A prosecutor cannot make direct comments on facts not in evidence, nor may the prosecutor draw unreasonable inferences from the evidence. See State v. T.J.M., 220 N.J. 220, 236 (2015). In this case, the State presented evidence showing the white bag with the weapon on the floor of the car where defendant was sitting; however, the State did not present any direct evidence or testimony establishing that defendant entered the car with the bag. Even so, based on all the evidence, it would not have been unreasonable for the jury to infer that defendant had entered the car with the bag.

In any event, even if the prosecutor erred by commenting about a person entering a car with a bag, the comments were not clearly and unmistakably improper. The prosecutor prefaced her comments by noting that she was using a hypothetical to make her point. Moreover, the comment was made in the context of a discussion of other evidence the State had presented showing defendant's consciousness of guilt, which included his movements in the car and

A-4920-16T3

his disruptive behavior. Furthermore, the judge's instruction eliminated any potential for prejudice from the prosecutor's comments. We therefore reject defendant's contention that the prosecutor's remarks deprived him of a fair trial.

V.

Defendant further argues that the judge's instruction to the jury on the certain persons charge was flawed because the judge did not sanitize the evidence of the predicate offense.

Here, defendant refused to stipulate to the predicate offense. During the pretrial conference, the trial judge decided that he would include the statutory citation of the predicate offense in the jury charge so that the State could meet its burden of proving beyond a reasonable doubt that element of the certain-persons charge.

At the trial, the State introduced a certified copy of a JOC, which stated that defendant had been convicted on January 12, 2001, of knowingly possessing a defaced firearm, in violation of N.J.S.A. 2C:39-3(d), a fourth-degree offense. In summation, the assistant prosecutor noted that this evidence established a predicate offense for the certain persons charge.

In his final instructions to the jury, the judge discussed the elements of the certain persons charge, and referenced the unredacted predicate offense. The

A-4920-16T3

judge stated that in order for the jury to find defendant guilty, the State had to prove all elements of the offense beyond a reasonable doubt. The judge said the State had to prove that "Exhibit S-3 is a firearm[,]" and that "defendant purchased, owned, possessed, or controlled the firearm on July 30th, 2014." The judge also said that the State had to prove that "defendant is a person who has been previously convicted of a crime of the fourth degree, specifically [N.J.S.A.] 2C:39-3[(d)]."

On appeal, defendant argues that the instruction was inconsistent with State v. Brown, 180 N.J. 572, 585 (2004), where the Court held that "[i]f the defendant does not stipulate [to the predicate offense], then the trial court should sanitize the offense or offenses and limit the evidence to the date of the judgment." However, in State v. Bailey, 231 N.J. 474, 490 (2018), the Court overruled Brown and "h[e]ld that a certain persons conviction cannot stand without proof that a defendant has been previously convicted of an offense specifically enumerated in the certain persons statute." The Court determined that if a defendant refused to stipulate to a predicate offense, the State must produce the JOC, "with the unredacted nature of the offense, the degree of offense, and the date of conviction." Id. at 490-91.

Defendant recognizes that <u>Bailey</u> overruled <u>Brown</u>, but argues that we should nevertheless apply <u>Brown</u> because his trial took place before <u>Bailey</u> was decided. We cannot agree. In <u>Bailey</u>, the Court found that the "over-sanitization" required by the model jury charge adopted after <u>Brown</u> "prevents a jury from finding beyond a reasonable doubt a required element of the certain persons offense – a clear constitutional infirmity." <u>Id.</u> at 488-89.

In this case, the trial court followed the procedure that the Court in <u>Bailey</u> found to be constitutionally required. We therefore reject defendant's contention that we should vacate his conviction and remand for a new trial using the framework expressly rejected in <u>Bailey</u>.

## VI.

Defendant also challenges his sentence. Defendant does not dispute that he met the criteria for imposition of a discretionary extended term as a persistent offender, pursuant to N.J.S.A. 2C:44-3(a). He argues, however, that the sentence imposed is excessive.

The scope of our review of the trial court's "sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." <u>State v. Blackmon</u>, 202 N.J. 283, 297 (2010) (citing <u>State v. Jarbath</u>, 114 N.J. 394, 401 (1989)). "The reviewing court must not substitute its judgment for that of the

sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). We must affirm a sentence unless:

> (1) the sentence guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Where, as here, a defendant is eligible for an extended term under N.J.S.A. 2C:44-3(a), the court is authorized to impose a sentence that is within a range that "reaches from the bottom of the original-term range to the top of the extended-term range." State v. Pierce, 188 N.J. 155, 169 (2006). The ordinary term for the certain persons offense is between five years and ten years, N.J.S.A. 2C:43-6(a)(2); and the extended term for the offense is between ten and twenty years. N.J.S.A. 2C:43-7(a)(3).

When sentencing defendant, the judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and the seriousness of the offenses for which he has been convicted); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The

21

judge noted that defendant's prior criminal record, which includes six prior indictable convictions, was "atrocious." The judge found no mitigating factors. As stated previously, the judge sentenced defendant to fourteen years of incarceration, with a seven-year period of parole ineligibility.

On appeal, defendant contends the State overreached in seeking an extended term because the ordinary minimum for the certain persons offense is five years of incarceration, with five years of parole ineligibility. He acknowledges that he has prior convictions. He asserts, however, that except for the predicate weapons offense, the prior convictions were for drug offenses. He also asserts that he did not brandish the weapon. It was found during a motor vehicle stop. He contends the judge should have imposed a five-year prison term, with five years of parole ineligibility.

We are convinced, however, that the trial judge followed the sentencing guidelines and the sentence imposed here does not represent an abuse of discretion. As noted, defendant's criminal record included six prior indictable convictions, including a prior weapons offense. We therefore reject defendant's contention that his sentence is excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4920-16T3